In re COLONIAL PIPELINE COMPANY, Texaco Inc., Texaco Pipeline Company Inc., Texaco Trading & Transportation Inc., TRMI Holdings Inc., Valero Energy Corporation, Valero Transmission L.P., Valero Management Co., Howard Secrest, and William Collins, Relators.

No. 98–0039.

Supreme Court of Texas.

May 8, 1998.

**940**

Harry M. Reasoner, L. Joseph Loveland, Houston, Hubert Oxford, III, Beaumont, Gary Gurwitz, McAllen, for Relator.

Ronald L. White, Bruce L. Jamison, Houston, Francisco J. Rodriguez, McAllen, Truett Bryan Akin, Houston, for Respondent.

PER CURIAM.

In the case underlying this original mandamus proceeding, 3,275 plaintiffs sued three defendants alleging negligence, nuisance, and trespass as the result of the rupture of four pipelines containing hazardous substances. We must decide whether the trial court abused its discretion by issuing an order (1) prohibiting defendants from obtaining discovery from all but ten plaintiffs until after the first ten claims are resolved, (2) requiring defendants to create and produce an inventory list of all material previously produced by plaintiffs and defendants and between defendants in three related cases and requiring that the person with the most knowledge of that inventory be presented for deposition, and (3) permitting plaintiffs in the initial trial group to tender their discovery responses up to the time of their deposition. We hold that the trial court abused its discretion by abating discovery, requiring production of an inventory list, and by not requiring the initial trial group plaintiffs to respond to defendants' discovery requests a reasonable time before their depositions. Because relators have no adequate remedy by appeal, we conditionally grant mandamus relief against the trial court.

In October 1994, the San Jacinto River flooded in Harris County. The overflowing river cut a channel 500 feet wide and twenty feet deep through a pasture. Four pipelines owned by Colonial Pipeline Company, Texaco Incorporated, and Valero Energy Corporation were exposed and undercut by the new channel. Each pipeline carried a different substance. The pipelines ruptured, causing gasoline, fuel oil, crude oil, and natural gas to spill into the floodwaters. The floodwaters subsequently caught fire, allegedly releasing toxic chemicals. The plaintiffs brought this suit in August 1995, seeking personal injury and property damages for alleged negligence, gross negligence, nuisance, and trespass. Other lawsuits arising from the pipeline ruptures and fire have also been filed by approximately 14,000 plaintiffs in Harris, Jefferson, Galveston, and Bexar Counties.

In February 1996, the defendants, relators here, served discovery requests on the plaintiffs, to which the plaintiffs objected in toto. On January 23, 1997, the plaintiffs filed a motion to select parties for trial and for entry of a docket control order. The defendants filed a response in opposition to the plaintiffs' motion. In February 1997, defendants filed a motion to compel discovery responses, to which plaintiffs failed to respond. Up to that date, no plaintiff had provided

any information or documents in response to any of the defendants' discovery requests. The trial court held a hearing on all pending motions on May 23, 1997. On August 14, 1997, almost two years after the original petition was filed, the trial court issued an order stating, among other things, that: (1) "Plaintiffs shall not be required to answer or supplement any/all discovery previously propounded by Defendants in this cause of action;" (2) "each of the Defendants shall produce ... [a] complete and comprehensive inventory of all evidentiary materials that have ... been produced by each such Defendant to the Plaintiffs in [three other pending cases involving the rupture of the pipelines and the subsequent fire]; [that have] been produced by plaintiffs to Defendants in [those cases]; [and that have] been produced by and between Defendants in [those cases];" and (3) "Defendants shall produce a witness(es) who is most knowledgeable about the foregoing evidence inventories, including the physical location and access to the evidence." A Docket Control Order ("scheduling order"), also signed on August 14, provided that the defendants could conduct discovery on the initial group of ten plaintiffs and that these plaintiffs' responses were "due prior to [their] depositions." After unsuccessfully seeking mandamus relief from the court of appeals, 960 S.W.2d 272, the defendants petitioned this Court for writ of mandamus to compel the trial court to vacate its discovery orders of August 14, 1997.

■ The scope of discovery is largely within the trial court's discretion. *Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex.1995). However, mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *See Tilton v. Marshall*, 925 S.W.2d 672, 682 (Tex. 1996); *Able Supply Co. v. Moye*, 898 S.W.2d 766, 768 (Tex.1995). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles. *See, e.g., Beaumont Bank, N.A.*

*v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). Mandamus relief may be justified when: (1) the appellate court would not be able to cure the trial court's discovery error, such as when privileged information or trade secrets would be revealed or production of patently irrelevant or duplicative documents imposing a disproportionate burden on the producing party is ordered; (2) the party's ability to present a viable claim or defense is severely compromised or vitiated by the erroneous discovery ruling to the extent that it is effectively denied the ability to develop the merits of its case; or (3) the trial court's discovery order disallows discovery which cannot be made a part of the appellate record, thereby denying the reviewing court the ability to evaluate the effect of the trial court's error. *Walker v. Packer*, 827 S.W.2d 833, 843–44 (Tex.1992).

■ We first consider whether the trial court abused its discretion by abating discovery from all but ten plaintiffs until after those ten plaintiffs' claims are resolved.[1] We have previously noted that "the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984); *see also Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 559 (Tex.1990); *Garcia v. Peeples*, 734 S.W.2d 343, 347 (Tex. 1987). "Both the plaintiffs and the defendants are entitled to full, fair discovery within a reasonable period of time...." *Moye*, 898 S.W.2d at 773.

In this case, relators are precluded from obtaining even the most basic information from 3,265 plaintiffs until after the claims of the initial trial group of ten are resolved. Given that three and a half years have already passed since the incident underlying this case occurred, it could be many months or even years before any discovery is available. Unfortunately but inevitably, memories fade with time and evidence may be lost or corrupted. Documents may be destroyed in compliance with document retention pro-

1. The trial court's order is not clear on whether discovery from some or all of the non-trial group plaintiffs will resume after trial in the first ten cases is completed, after the trial court renders final judgment in the first ten cases, or after the cases are finally disposed of on appeal.

grams. More importantly, there were four different pipelines with different substances involved. Certain illnesses or damage may conceivably be attributable to one but not all of the substances involved. The defendants have not been provided, among other things, with descriptions of the plaintiffs' alleged injuries, the names of treating physicians, or the names of the substances that caused the alleged injuries. Without discovery of basic medical information from all the plaintiffs, each defendant is put in the position of preparing to defend itself against claims that may not involve the substance that was contained in its pipeline. While we encourage trial courts to manage litigation actively, to try test cases to establish benchmark results, and to prohibit needless or repetitive discovery in thousands of cases that might never be tried, "[e]ach defendant is entitled to discover whether there has been a medical determination that an illness has been caused by that defendant's product." [2] *Moye,* 898 S.W.2d at 770. We therefore conclude that the trial court's order abating all discovery from such a large group of parties constitutes an abuse of discretion.

■ We next consider whether relators have an adequate remedy by appeal from the trial court's order abating discovery. Relators argue that the trial court's order denies them discovery that goes to the heart of the litigation. For the reasons previously discussed, we agree. *See Walker,* 827 S.W.2d at 843; *compare Polaris Inv. Management Corp. v. Abascal,* 892 S.W.2d 860, 862 (Tex. 1995) (case involving securities fraud wherein the Court held that, based on the record before it, the trial court's abatement of discovery did not go to the heart of the defendant's case).

■ The second issue is whether the trial court abused its discretion when it ordered relators to produce (1) an inventory of all discovery produced by any party in three related cases pending in other counties and (2) a person knowledgeable about the inventory for deposition. Relators argue that

there is no discovery rule or Texas case that allows a trial court to compel a party to create indices or otherwise reduce information to a tangible form in which it does not already exist. They argue that creation of such an inventory would be extremely burdensome and in many cases irrelevant. Relators also contend that such an order invades the work product privilege. Real parties in interest respond that the trial court has discretion to facilitate the litigation by requiring preparation of a list of all documents produced in other litigation. We disagree.

■ The discovery and production of documents and other tangible things is governed by Texas Rule of Civil Procedure 167. As this Court noted in *McKinney v. National Union Fire Insurance Co.,* 772 S.W.2d 72, 73 n. 2 (Tex.1989), "[t]his rule cannot be used to force a party to make lists or reduce information to tangible form." *See also Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex. 1989). Rule 166b(2)(b) of the Texas Rules of Civil Procedure provides that "[a] person is not required to produce a document or tangible thing unless it is within the person's possession, custody or control." A document that does not exist is not within a party's "possession, custody or control." The only exception to the rule that a party cannot be compelled to create or construct a document for its opponent involves the factual observations, tests, or supporting data of a testifying expert. *See* TEX.R. CIV. P. 166b(2)(e)(4). While the plaintiffs may be entitled to production of any relevant discovery from the related cases "as they are kept in the usual course of business," relators cannot be forced to prepare an inventory of the documents for plaintiffs. TEX.R. CIV. P. 166b(2)(a), 167(1)(f). For the foregoing reasons, we hold that the trial court abused its discretion in ordering production of the inventory.

■ Relators do not have an adequate remedy by appeal from the trial court's order requiring the creation and production of the document inventory because preparation of

---

**2.** The abatement of discovery of such a large group of plaintiffs is especially troublesome given the new summary judgment rule which allows a party to dispose of claims at the pre-trial stage when, "[a]fter adequate time for discovery," there is no evidence of an essential element of an opponent's cause of action or defense. TEX.R. CIV. P. 166a(i).

such an inventory would be overly burdensome and, as such, an appellate court would not be able to cure the discovery error. *See Walker,* 827 S.W.2d at 843–44. Because we hold that the trial court abused its discretion in ordering the production of the inventory and relators do not have an adequate remedy by appeal, we do not consider relators' argument that the trial court also abused its discretion in ordering relators to present for deposition a person knowledgeable about the inventory and underlying documents.

Finally, we consider whether relators are entitled to mandamus relief to correct that portion of the trial court's scheduling order which conceivably allows a plaintiff up until the time of her deposition to respond to a defendant's discovery request. In *General Motors Corp. v. Gayle,* 951 S.W.2d 469, 477 (Tex.1997), we stated that "[i]n the absence of any other error, we would not grant [mandamus] relief merely to revise a trial judge's scheduling order, however perverse." As was the case in *General Motors,* there are other errors present in this case that we must remedy by mandamus. "Under these special circumstances, the interests of judicial economy dictate that we should also remedy the [error in the] trial court's [scheduling order] by mandamus." *Id.*

A trial court has discretion to schedule discovery. Although discovery responses are usually due within thirty days after service of the request, the Rules provide that the trial court may shorten or lengthen the time for making a response for good cause. *See* Tex.R. Civ. P. 167(2), 168(4). A trial court can, however, abuse its discretion by acting in an unreasonable manner. *See Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). We examine the trial court's order to determine if it is reasonable under the circumstances.

A party should generally be allowed a reasonable amount of time sufficient to allow for meaningful review of discovery responses before deposing a party. The purpose behind the taking of depositions is thwarted when parties are forced to do so without the basic facts surrounding the deponents claims or defenses. There may be instances where discovery responses are permissibly provided at the eve of a party's deposition, such as when the discovery requested is voluminous and the deponent has objected or otherwise made it known to the court or the opposing party that it will not be able to respond until that late date. In this case, however, there appears to be no legitimate reason why plaintiffs' discovery responses cannot be provided at an earlier time. The trial court abused its discretion in this case by arbitrarily lengthening the plaintiffs' response time without a showing of good cause.

Because we conclude that the trial court abused its discretion by abating discovery, requiring production of an inventory list, and enlarging the plaintiffs' response time to defendants' discovery requests, and the relators do not have an adequate remedy by appeal, we conditionally grant writ of mandamus compelling the trial court to vacate those portions of its August 14, 1997, discovery and scheduling orders.