COURT OF APPEALS









 

COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

 




 
 
  
  
  
  
 IN
 RE JOBE CONCRETE PRODUCTS, INC.,
  
                                      Relator
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
  
  
 No. 08-02-00348-CV
  
 AN ORIGINAL PROCEEDING
  
 IN MANDAMUS
 
 




 

 

O P I N I O N

 

Relator, Jobe
Concrete Products, Inc. (AJobe@), asks this Court to issue a writ of
mandamus against Respondent, the Honorable Herbert Cooper, Judge of the County
Court at Law No. Five of El Paso County.  For the reasons stated, we conditionally
grant the writ.

I.  SUMMARY OF THE EVIDENCE

Real Parties in Interest, Joe,
Angelina, and Yvonne Piñon (Athe Piñons@), reside near Jobe=s McKelligon
Canyon quarry.  They filed suit against Jobe alleging they were exposed to the blasting, noise from
the blasting, and emissions of fine particulate matter and dust from Jobe=s facility.  The Piñons asserted causes of action for negligence and
nuisance.  








The Piñons
retained Dr. Hank Jenkins-Smith to testify as an expert witness regarding
potential property value losses in the neighborhood adjacent to the
quarry.  In September of 2001, Dr.
Jenkins-Smith issued a report entitled AAssessment of the Effects of
Operations of Jobe Concrete Products, Inc., on
Property Values in Adjacent Neighborhoods in El Paso, Texas.@ 
As part of the evaluation, Dr. Jenkins-Smith developed and implemented a
telephone survey of residents of El Paso County, Texas to measure the ways in
which disclosure of the history of complaints and environmental violations by Jobe would affect the decisions of buyers and sellers
regarding the sale of a typical house in the affected area.  The telephone survey was designed to measure
the willingness of a person to pay for a typical house with and without the
disclosure of the record of complaints about the site.  The survey asked respondents to place
themselves in the position of a seller of a home in the affected area and to
indicate whether they would be willing to sell the house at a discount.  The survey also included questions concerning
the perceived risk associated with living near the quarry and how living in the
area would affect the use and value of a home.  









In October of 2000 prior to Dr.
Jenkins-Smith=s report, Jobe
served the Piñons with a Request for Disclosure and
pursuant to Texas Rule of Civil Procedure 194.2(f)(4)(A),
requested Aall documents, tangible things,
reports, model, or data compilations that have been provided to, reviewed by,
or prepared by or for the expert in anticipation of the expert=s testimony.@ 
Tex. R. Civ.
P. 194.2(f)(4)(A).  The Piñons
responded at that time that no determination had been made as to which experts,
if any, may be called to testify at the time of trial.  Jobe filed another
Request for Production on February 12, 2002 requesting specific information
relating to Dr. Jenkins-Smith=s survey.  The Piñons filed their objections and responses, in which they
asserted that the materials were not discoverable because they were protected
by a Ahuman subjects
protection privilege.@  The Piñons argued that federal law protected any information
regarding the identities of the survey participants from disclosure. Jobe then filed motions to compel production of these
materials. 








In their supplemental response to Jobe=s motion to compel, the Piñons
maintained that 
federal law protected the documents requested and insisted that
all documents in their care, custody or control had been produced.  With regard to Request for Production No. 6,
the documents reflecting the name, address, and telephone number of the small
sample of realtors Dr. Jenkins-Smith referenced in his report, the Piñons stated that if any such documents existed, they were
in the care, custody and control of the University of New Mexico (AUNM@), and that neither they, nor Dr.
Jenkins-Smith, had the authority to compel production.  With regard to Request for Production No. 7,
the random digit dialing phone number list purchased from Survey Sampling,
Inc., and mentioned in Dr. Jenkins-Smith=s report, the Piñons
maintained that neither they nor Dr. Jenkins-Smith had any such documents and
Dr. Jenkins-Smith had not relied on any such documents.  Finally with regard to Request for Production
No. 12, all documents identifying the name, address, and telephone number of
any individuals comprising the usable sample of 1, 082 mentioned in Dr.
Jenkins-Smith=s report, the Piñons
maintained that neither they nor Dr. Jenkins-Smith had any such documents in
their care, custody or control, and that if any such documents existed, they
were in the care, custody and control of UNM that they, nor Dr. Jenkins-Smith,
had the authority to compel production. 
They also argued that UNM was precluded by law from producing such
documents.  In support of their motion,
the Piñons attached the affidavit of Dr.
Jenkins-Smith, Professor Robert E. O=Connor, from Penn State University
and the National Science Foundation, and Professor Amy Goodin,
from UNM. 








In his affidavit, Dr. Jenkins-Smith
stated that he did not have the names, addresses or telephone numbers of the
small sample of realtors, but had requested the list from the UNM=s Institute for Public Policy.  He stated that UNM was checking with
University Counsel to determine whether the University human subjects
protection requirements would permit release of the names and phone numbers of
the realty firms.  As for the random
digit dialing phone number list, Dr. Jenkins-Smith stated that he did not have
the list in his possession, but that UNM=s Institute for Public Policy
conducted its surveys in accordance with a protocol approved by UNM=s Human Subjects Internal Review
Board (AIRB@) and that the protocol required that
the confidentiality of the individual respondents be observed by removing
telephone numbers and other personal identifiers from the survey data before
they are released for analysis.  Dr.
Jenkins-Smith maintained that this protocol prevented him from receiving the
original list from Survey Sampling, Inc., and any other documents identifying
the survey respondents.  He also noted
that he had been advised by UNM that it would not release this information to
him and that he had no means by which to compel UNM to release it to him.  Finally, Dr. Jenkins-Smith stated that he
never had any of the requested documents in his possession and that UNM=s Public Policy Institute had informed
him that 1) they did not produce such a document (i.e., the names of the survey
respondents were never recorded); 2) all files concerning survey data were
purged; and 3) they would not be able to release such information if they had
it due to the human subjects protection requirements of UNM.

Dr. O=Connor stated in his affidavit that A[r]eleasing
phone numbers, addresses, or names of survey participants to litigants would
have significant and detrimental consequences for scientific studies.@ 
He asserted that it would become more difficult to obtain representative
samples and honest answers.  Dr. O=Connor suggested that a litigant
could successfully vitiate the results of a survey without contacting the
participants by demanding the survey professionals produce a thorough complete
explanation of their methods. 

In her affidavit, Professor Goodin stated that regardless of the reasons for the
request of information concerning the Jobe study, she
respectfully refused to release any information  other than that which would not
directly impact the participants in the study. 
She stated that UNM=s IRB, as well as the Code of Federal Regulations, required
that survey participants= confidentiality and anonymity be
protected.  Further, Professor Goodin noted that while she could not release the phone
files used to identify potentially eligible households due to the implications
of such an act, the phone files only included the phone numbers for each
household in the sample frame and there was no information that would
differentiate a household that participated from one that did not. 








At the hearing on Jobe=s motions to compel, the Piñons argued that Dr. Jenkins-Smith never had in his
possession any list of names, phone numbers or addresses because UNM=s Public Policy Institute follows a
protocol under which such information is not released.  The only information Dr. Jenkins-Smith
received from UNM were the results of the requested research.  The Piñons maintained
that the only telephone list that ever existed was provided to UNM and UNM
refused to provide it for the reasons cited in Professor Goodin=s affidavit.  Moreover, they maintained that they could not
produce something that never existed in the first place.  The trial court ruled that the Piñons were not required Ato produce the names, addresses or
telephone numbers of the people that were contacted for the survey.@ 


II.  DISCUSSION

Mandamus will lie only to correct a
clear abuse of discretion.  Walker v.
Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).  Moreover, there must be no other adequate
remedy at law.  Id.  Relator argues that
the trial court clearly abused its discretion in refusing to allow discovery of
documents reflecting the identities and telephone numbers of people polled in a
survey that was produced for, and relied upon by, the Piñons= testifying expert in forming his
expert opinions.  The Piñons
maintain that it is not a clear abuse of discretion to deny a request to
produce a document that does not exist and that the lists requested are
protected by privilege. 

A. 
Clear Abuse of Discretion

An appellate court rarely interferes
with a trial court=s exercise of discretion. 
A clear abuse of discretion warranting correction by mandamus occurs
when a court issues a decision which is without basis or guiding principles of
law.  Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding).








Jobe argues that the Piñons
are required to produce all documents Aprepared by or for@ Dr. Jenkins-Smith.  See Tex.
R. Civ. P. 194.2(f)(4)(A).  Because it was undisputed that 1) Dr.
Jenkins-Smith was a testifying expert for the Piñons;
2) Dr. Jenkins-Smith engaged UNM to conduct the telephone survey; 3) UNM
utilized the phone list purchased from Survey Sampling, Inc., in conducting the
survey; and 4) Dr. Jenkins-Smith relied upon the survey results in reaching his
opinions, Jobe maintains that it has a right to such
a list.  Further, Jobe
argues that the privilege asserted by the Piñons, the
Ahuman subjects
protection privilege,@ is not recognized in Texas. 

The Piñons= argue that the lists Jobe requested did not exist.  They rely on the affidavits attached to their
response to the motions to compel.  Dr.
Jenkins-Smith stated that he never had any of the requested documents in his
possession and that UNM=s Public Policy Institute had informed him that 1) they did
not produce such a document (i.e., the names of the survey respondents were
never recorded); 2) all files concerning survey data were purged; and 3) they
would not be able to release such information even if they had it due to the
human subjects protection requirements of UNM. 
Professor Goodin stated that the data set did
not include any names or telephone numbers since that information was not
collected nor maintained as a key research component in the study.  She went on to state that even if she could
release the phone files used to identify potentially eligible households, Athat the phone files only include the
phone numbers for each household in the sample frame; there is no information
that would differentiate a household that participated from one that did not.@ 
Further, Professor Goodin stated that UNM=s IRB, as well as the Code of Federal
Regulations, required that survey participants= confidentiality and anonymity be
protected. 








The Piñons
cite In re Colonial Pipeline for the proposition that it is not an abuse
of discretion to deny a request to produce a document that does not exist.  968 S.W.2d 938, 942 (Tex.
1998).  The relators
in Colonial Pipeline argued that the trial court abused its discretion
when it ordered relators to produce (1) an inventory
of all discovery produced by any party in three related cases pending in other
counties and (2) a person knowledgeable about the inventory for
deposition.  Id.  Relators argued
that there was no discovery rule or Texas case that allowed a trial court to
compel a party to create indices or otherwise reduce information to a tangible
form in which it does not already exist. 
Id.  The real parties in
interest argued that the trial court has discretion to facilitate the litigation
by requiring preparation of a list of all documents produced in other
litigation.  Id.  The court held that the plaintiffs may be
entitled to production of any relevant discovery from the related cases Aas they are kept in the usual course
of business,@ but that relators
cannot be forced to prepare an inventory of the documents for plaintiffs.  Id.

The facts of the case at bar are
distinguishable in that Jobe is requesting Aall documents, tangible things,
reports, model, or data compilations that have been provided to, reviewed by,
or prepared by or for the expert in anticipation of the expert=s testimony.@ 
Tex. R. Civ. P. 194.2(f)(4)(A).  Jobe is not asking that the trial court require the Piñons to create a list that reduces information to a
tangible form in which it does not already exist.  While the Piñons and
their experts maintain that such a list does not exist, Professor Goodin indicated that  regardless of the reasons for the
request of information, she respectfully refused to release any information
other than that which would not directly impact the participants in the study
based on the human subjects protection privilege. 

The Piñons
and their experts cite the Code of Federal Regulations for the proposition that
the lists requested by Jobe are protected by
privilege.  45 C.F.R. '
46.101.  These regulations relate
to all research conducted or supported by a federal department or agency, or
research that is neither conducted nor supported by a federal department or
agency, but is subject to review and approval by an institutional review
board.  Id.  The regulations state the Department of
Health and Human Services= general policy for the protection of human research
subjects.  Id.  We note that there is no actual privilege
mentioned in the regulations.  The only
mention of confidentiality is under the section entitled A Basic elements of informed consent@ and provides that each subject shall
be provided with A[a] statement describing the extent, if any, to which
confidentiality of records identifying the subject will be maintained.@ 45 C.F.R. ' 46.116 (a)(5).


Dr. O=Connor outlined some of the public
policies concerns in his affidavit.  He
noted that A[r]eleasing
phone numbers, addresses, or names of survey participants to litigants would
have significant and detrimental consequences for scientific studies.@ 
He stated that it would become more difficult to obtain representative
samples and honest answers if the anonymity and confidentiality that
contributes to a respondent=s answers was breached. 








While we agree with the public policy
underlying the federal regulations, we do not believe such regulations create a
privilege in this case.  The Texas Rules
of Evidence do not recognize this privilege and we have found no Texas case law
in which the privilege has been asserted and/or accepted.  Tex.
R. Evid 501.  The survey at issue
was performed on behalf of Dr. Jenkins-Smith and for the purpose of this
litigation.  There is no evidence that
the study was federally funded or that the study=s results were used in any other
format by UNM.  Thus, we do not believe
the federal regulations are applicable. 
The Texas Rules of Civil Procedure are clear that the Piñons must disclose Aall documents, tangible things,
reports, model, or data compilations that have been provided to, reviewed by,
or prepared by or for the expert in anticipation of the expert=s testimony.@  Tex. R. Civ. P. 194.2(f)(4)(A).  The lists at
issue were prepared by someone, whether it was UNM, Professor Goodin, or Survey Sampling, Inc., and were relied upon by
Dr. Jenkins-Smith in anticipation of his testimony and report.  As we noted in In
re Family Hospice, Ltd., it does not matter how or when the information
sought was acquired, if documents in question are the product and/or
documentation of the mental impressions of a testifying expert, they are
discoverable.  62 S.W.3d 313, 316 (Tex.
App.-- El Paso 2001, orig. proceeding).  While the documents sought in this case are
different than those sought in Family Hospice, Ltd., the fact remains
that they are discoverable under the rules of civil procedure. 

B. No Adequate Remedy by Appeal








An appellate court will deny mandamus
relief if another remedy, usually appeal, is available and adequate.  Street v.
Second Court of Appeals, 715 S.W.2d 638, 639‑40 (Tex. 1986) (orig.
proceeding).  Mandamus will not issue
where there is Aa clear and adequate remedy at law, such as a normal appeal.@ 
Walker, 827 S.W.2d at 840 (quoting State v. Walker, 679
S.W.2d 484, 485 (Tex.1984)).  Mandamus is
intended to be an extraordinary remedy, available only in limited
circumstances.  The writ will issue Aonly in situations involving manifest
and urgent necessity and not for grievances that may be addressed by other
remedies.@ Holloway v. Fifth Court of
Appeals, 767 S.W.2d 680, 684 (Tex. 1989) (quoting James Sales, Original
Jurisdiction of the Supreme Court and the Courts of Civil Appeals of Texas in
Appellate Procedure in Texas ' 1.4(1)(b) at 47 [2d ed.1979]).

The Texas Supreme Court has noted
three situations in the discovery context when an appeal is not an adequate
remedy and when mandamus is proper.  First, when the trial court erroneously orders the disclosure of
privileged information that will materially affect the rights of the aggrieved
party, such as documents protected by the attorney‑client privilege, an
appeal will not be an adequate remedy when the appellate court is unable to
cure such error. Walker, 827 S.W.2d at 843.  Relator has made no
such complaint in the matter before us.

Second, where the party=s ability to present a viable claim
or defense is vitiated or severely compromised, appellate remedy may be inadequate.  Id. 
Relator has made no such complaint in the
matter before us.

Finally, when the trial court
disallows discovery and the missing discovery cannot be made part of the
appellate record, thereby precluding appellate review, mandamus is a proper
remedy.  Id.  Relator argues that
without the identities or telephone numbers of the survey participants, it will
be unable to identify and contact the participants and develop a record showing
the inadequacy of the survey relied upon by Dr. Jenkins-Smith.  We agree and hold that Relator
does not have an adequate remedy by appeal. 
Accordingly, we sustain Issue No. One.








We conditionally grant the Relator=s petition for writ of mandamus.  Nonetheless, we are confident the trial court
will comply with this order, thus writ will not issue unless it fails

to vacate the letter order of July 9,
2002, and to grant Relator=s Motion to Compel in its entirety. 

December
31, 2002

 

 

                                                                                                                                                RICHARD
BARAJAS, Chief Justice

 

 

 

Before
Panel No. 4

Barajas,
C.J., Larsen, and McClure, JJ.

(Larsen,
J. not participating)

 

(Publish)