In re JOBE CONCRETE PRODUCTS, INC., Relator.

No. 08–02–00348–CV.

Court of Appeals of Texas, El Paso.

Dec. 31, 2002.

Rehearing Overruled Feb. 12, 2003.

J. Roberto Oaxaca, Oaxaca, Bernal & Associates, El Paso, Robert C. Hilliard, Hilliard & Munoz, Corpus Christi, Herbert E. Cooper, El Paso, for respondent.

Marjorie Wilcox Jobe, Jobe Law Firm, P.L.L.C., Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, for Relator.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

Relator, Jobe Concrete Products, Inc. ("Jobe"), asks this Court to issue a writ of mandamus against Respondent, the Honorable Herbert Cooper, Judge of the County Court at Law No. Five of El Paso County. For the reasons stated, we conditionally grant the writ.

## I. SUMMARY OF THE EVIDENCE

Real Parties in Interest, Joe, Angelina, and Yvonne Piñon ("the Piñons"), reside near Jobe's McKelligon Canyon quarry. They filed suit against Jobe alleging they were exposed to the blasting, noise from the blasting, and emissions of fine particulate matter and dust from Jobe's facility. The Piñons asserted causes of action for negligence and nuisance.

The Piñons retained Dr. Hank Jenkins–Smith to testify as an expert witness regarding potential property value losses in the neighborhood adjacent to the quarry. In September of 2001, Dr. Jenkins–Smith issued a report entitled "Assessment of the Effects of Operations of Jobe Concrete Products, Inc., on Property Values in Adjacent Neighborhoods in El Paso, Texas." As part of the evaluation, Dr. Jenkins–Smith developed and implemented a telephone survey of residents of El Paso County, Texas to measure the ways in which disclosure of the history of complaints and environmental violations by Jobe would affect the decisions of buyers and sellers regarding the sale of a typical house in the affected area. The telephone survey was designed to measure the willingness of a person to pay for a typical house with and without the disclosure of the record of complaints about the site. The survey asked respondents to place themselves in the position of a seller of a home in the affected area and to indicate whether they would be willing to sell the house at a discount. The survey also included questions concerning the perceived risk associated with living near the quarry and how living in the area would affect the use and value of a home.

In October of 2000 prior to Dr. Jenkins–Smith's report, Jobe served the Piñons

with a Request for Disclosure and pursuant to Texas Rule of Civil Procedure 194.2(f)(4)(A), requested "all documents, tangible things, reports, model, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony." Tex.R. Civ. P. 194.2(f)(4)(A). The Piñons responded at that time that no determination had been made as to which experts, if any, may be called to testify at the time of trial. Jobe filed another Request for Production on February 12, 2002 requesting specific information relating to Dr. Jenkins–Smith's survey. The Piñons filed their objections and responses, in which they asserted that the materials were not discoverable because they were protected by a "human subjects protection privilege." The Piñons argued that federal law protected any information regarding the identities of the survey participants from disclosure. Jobe then filed motions to compel production of these materials.

In their supplemental response to Jobe's motion to compel, the Piñons maintained that federal law protected the documents requested and insisted that all documents in their care, custody or control had been produced. With regard to Request for Production No. 6, the documents reflecting the name, address, and telephone number of the small sample of realtors Dr. Jenkins–Smith referenced in his report, the Piñons stated that if any such documents existed, they were in the care, custody and control of the University of New Mexico ("UNM"), and that neither they, nor Dr. Jenkins–Smith, had the authority to compel production. With regard to Request for Production No. 7, the random digit dialing phone number list purchased from Survey Sampling, Inc., and mentioned in Dr. Jenkins–Smith's report, the Piñons maintained that neither they nor Dr. Jenkins–Smith had any such documents and Dr. Jenkins–Smith had not relied on any such documents. Finally with regard to Request for Production No. 12, all documents identifying the name, address, and telephone number of any individuals comprising the usable sample of 1, 082 mentioned in Dr. Jenkins–Smith's report, the Piñons maintained that neither they nor Dr. Jenkins–Smith had any such documents in their care, custody or control, and that if any such documents existed, they were in the care, custody and control of UNM that they, nor Dr. Jenkins–Smith, had the authority to compel production. They also argued that UNM was precluded by law from producing such documents. In support of their motion, the Piñons attached the affidavit of Dr. Jenkins–Smith, Professor Robert E. O'Connor, from Penn State University and the National Science Foundation, and Professor Amy Goodin, from UNM.

In his affidavit, Dr. Jenkins–Smith stated that he did not have the names, addresses or telephone numbers of the small sample of realtors, but had requested the list from the UNM's Institute for Public Policy. He stated that UNM was checking with University Counsel to determine whether the University human subjects protection requirements would permit release of the names and phone numbers of the realty firms. As for the random digit dialing phone number list, Dr. Jenkins–Smith stated that he did not have the list in his possession, but that UNM's Institute for Public Policy conducted its surveys in accordance with a protocol approved by UNM's Human Subjects Internal Review Board ("IRB") and that the protocol required that the confidentiality of the individual respondents be observed by removing telephone numbers and other personal identifiers from the survey data before they are released for analysis. Dr. Jenkins–Smith maintained that this protocol prevented him from receiving the original

list from Survey Sampling, Inc., and any other documents identifying the survey respondents. He also noted that he had been advised by UNM that it would not release this information to him and that he had no means by which to compel UNM to release it to him. Finally, Dr. Jenkins–Smith stated that he never had any of the requested documents in his possession and that UNM's Public Policy Institute had informed him that 1) they did not produce such a document (i.e., the names of the survey respondents were never recorded); 2) all files concerning survey data were purged; and 3) they would not be able to release such information if they had it due to the human subjects protection requirements of UNM.

Dr. O'Connor stated in his affidavit that "[r]eleasing phone numbers, addresses, or names of survey participants to litigants would have significant and detrimental consequences for scientific studies." He asserted that it would become more difficult to obtain representative samples and honest answers. Dr. O'Connor suggested that a litigant could successfully vitiate the results of a survey without contacting the participants by demanding the survey professionals produce a thorough complete explanation of their methods.

In her affidavit, Professor Goodin stated that regardless of the reasons for the request of information concerning the Jobe study, she respectfully refused to release any information other than that which would not directly impact the participants in the study. She stated that UNM's IRB, as well as the Code of Federal Regulations, required that survey participants' confidentiality and anonymity be protected. Further, Professor Goodin noted that while she could not release the phone files used to identify potentially eligible households due to the implications of such an act, the phone files only included the phone numbers for each household in the sample frame and there was no information that would differentiate a household that participated from one that did not.

At the hearing on Jobe's motions to compel, the Piñons argued that Dr. Jenkins–Smith never had in his possession any list of names, phone numbers or addresses because UNM's Public Policy Institute follows a protocol under which such information is not released. The only information Dr. Jenkins–Smith received from UNM were the results of the requested research. The Piñons maintained that the only telephone list that ever existed was provided to UNM and UNM refused to provide it for the reasons cited in Professor Goodin's affidavit. Moreover, they maintained that they could not produce something that never existed in the first place. The trial court ruled that the Piñons were not required "to produce the names, addresses or telephone numbers of the people that were contacted for the survey."

## II. DISCUSSION

■ Mandamus will lie only to correct a clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Moreover, there must be no other adequate remedy at law. *Id.* Relator argues that the trial court clearly abused its discretion in refusing to allow discovery of documents reflecting the identities and telephone numbers of people polled in a survey that was produced for, and relied upon by, the Piñons' testifying expert in forming his expert opinions. The Piñons maintain that it is not a clear abuse of discretion to deny a request to produce a document that does not exist and that the lists requested are protected by privilege.

### A. Clear Abuse of Discretion

■ An appellate court rarely interferes with a trial court's exercise of discretion.

A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without basis or guiding principles of law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding).

Jobe argues that the Piñons are required to produce all documents "prepared by or for" Dr. Jenkins–Smith. *See* Tex.R. Civ. P. 194.2(f)(4)(A). Because it was undisputed that 1) Dr. Jenkins–Smith was a testifying expert for the Piñons; 2) Dr. Jenkins–Smith engaged UNM to conduct the telephone survey; 3) UNM utilized the phone list purchased from Survey Sampling, Inc., in conducting the survey; and 4) Dr. Jenkins–Smith relied upon the survey results in reaching his opinions, Jobe maintains that it has a right to such a list. Further, Jobe argues that the privilege asserted by the Piñons, the "human subjects protection privilege," is not recognized in Texas.

The Piñons' argue that the lists Jobe requested did not exist. They rely on the affidavits attached to their response to the motions to compel. Dr. Jenkins–Smith stated that he never had any of the requested documents in his possession and that UNM's Public Policy Institute had informed him that 1) they did not produce such a document (i.e., the names of the survey respondents were never recorded); 2) all files concerning survey data were purged; and 3) they would not be able to release such information even if they had it due to the human subjects protection requirements of UNM. Professor Goodin stated that the data set did not include any names or telephone numbers since that information was not collected nor maintained as a key research component in the study. She went on to state that even if she could release the phone files used to identify potentially eligible households, "that the phone files only include the phone numbers for each household in the sample frame; there is no information that would differentiate a household that participated from one that did not." Further, Professor Goodin stated that UNM's IRB, as well as the Code of Federal Regulations, required that survey participants' confidentiality and anonymity be protected.

The Piñons cite *In re Colonial Pipeline* for the proposition that it is not an abuse of discretion to deny a request to produce a document that does not exist. 968 S.W.2d 938, 942 (Tex.1998). The relators in *Colonial Pipeline* argued that the trial court abused its discretion when it ordered relators to produce (1) an inventory of all discovery produced by any party in three related cases pending in other counties and (2) a person knowledgeable about the inventory for deposition. *Id.* Relators argued that there was no discovery rule or Texas case that allowed a trial court to compel a party to create indices or otherwise reduce information to a tangible form in which it does not already exist. *Id.* The real parties in interest argued that the trial court has discretion to facilitate the litigation by requiring preparation of a list of all documents produced in other litigation. *Id.* The court held that the plaintiffs may be entitled to production of any relevant discovery from the related cases "as they are kept in the usual course of business," but that relators cannot be forced to prepare an inventory of the documents for plaintiffs. *Id.*

The facts of the case at bar are distinguishable in that Jobe is requesting "all documents, tangible things, reports, model, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony." Tex.R. Civ. P. 194.2(f)(4)(A). Jobe is not asking that the trial court require the Piñons to create a

list that reduces information to a tangible form in which it does not already exist. While the Piñons and their experts maintain that such a list does not exist, Professor Goodin indicated that regardless of the reasons for the request of information, she respectfully refused to release any information other than that which would not directly impact the participants in the study based on the human subjects protection privilege.

■ The Piñons and their experts cite the Code of Federal Regulations for the proposition that the lists requested by Jobe are protected by privilege. 45 C.F.R. § 46.101. These regulations relate to all research conducted or supported by a federal department or agency, or research that is neither conducted nor supported by a federal department or agency, but is subject to review and approval by an institutional review board. *Id.* The regulations state the Department of Health and Human Services' general policy for the protection of human research subjects. *Id.* We note that there is no actual privilege mentioned in the regulations. The only mention of confidentiality is under the section entitled "Basic elements of informed consent" and provides that each subject shall be provided with "[a] statement describing the extent, if any, to which confidentiality of records identifying the subject will be maintained." 45 C.F.R. § 46.116(a)(5).

Dr. O'Connor outlined some of the public policies concerns in his affidavit. He noted that "[r]eleasing phone numbers, addresses, or names of survey participants to litigants would have significant and detrimental consequences for scientific studies." He stated that it would become more difficult to obtain representative samples and honest answers if the anonymity and confidentiality that contributes to a respondent's answers was breached.

■ While we agree with the public policy underlying the federal regulations, we do not believe such regulations create a privilege in this case. The Texas Rules of Evidence do not recognize this privilege and we have found no Texas case law in which the privilege has been asserted and/or accepted. Tex.R. Evid 501. The survey at issue was performed on behalf of Dr. Jenkins–Smith and for the purpose of this litigation. There is no evidence that the study was federally funded or that the study's results were used in any other format by UNM. Thus, we do not believe the federal regulations are applicable. The Texas Rules of Civil Procedure are clear that the Piñons must disclose "all documents, tangible things, reports, model, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony." Tex.R. Civ. P. 194.2(f)(4)(A). The lists at issue were prepared by someone, whether it was UNM, Professor Goodin, or Survey Sampling, Inc., and were relied upon by Dr. Jenkins–Smith in anticipation of his testimony and report. As we noted in *In re Family Hospice, Ltd.,* it does not matter how or when the information sought was acquired, if documents in question are the product and/or documentation of the mental impressions of a testifying expert, they are discoverable. 62 S.W.3d 313, 316 (Tex. App.-El Paso 2001, orig. proceeding). While the documents sought in this case are different than those sought in *Family Hospice, Ltd.,* the fact remains that they are discoverable under the rules of civil procedure.

### B. No Adequate Remedy by Appeal

■ An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate. *Street v. Second Court of Appeals,* 715

S.W.2d 638, 639–40 (Tex.1986) (orig.proceeding). Mandamus will not issue where there is "a clear and adequate remedy at law, such as a normal appeal." *Walker*, 827 S.W.2d at 840 (quoting *State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984)). Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. The writ will issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989) (quoting James Sales, Original Jurisdiction of the Supreme Court and the Courts of Civil Appeals of Texas in Appellate Procedure in Texas § 1.4(1)(b) at 47 [2d ed.1979] ).

The Texas Supreme Court has noted three situations in the discovery context when an appeal is not an adequate remedy and when mandamus is proper. First, when the trial court erroneously orders the disclosure of privileged information that will materially affect the rights of the aggrieved party, such as documents protected by the attorney-client privilege, an appeal will not be an adequate remedy when the appellate court is unable to cure such error. *Walker*, 827 S.W.2d at 843. Relator has made no such complaint in the matter before us.

Second, where the party's ability to present a viable claim or defense is vitiated or severely compromised, appellate remedy may be inadequate. *Id.* Relator has made no such complaint in the matter before us.

Finally, when the trial court disallows discovery and the missing discovery cannot be made part of the appellate record, thereby precluding appellate review, mandamus is a proper remedy. *Id.* Relator argues that without the identities or telephone numbers of the survey partici-

pants, it will be unable to identify and contact the participants and develop a record showing the inadequacy of the survey relied upon by Dr. Jenkins–Smith. We agree and hold that Relator does not have an adequate remedy by appeal. Accordingly, we sustain Issue No. One.

We conditionally grant the Relator's petition for writ of mandamus. Nonetheless, we are confident the trial court will comply with this order, thus writ will not issue unless it fails to vacate the letter order of July 9, 2002, and to grant Relator's Motion to Compel in its entirety.

LARSEN, J., not participating.