Petitions for Writ of Mandamus Denied and Opinion Filed May 13, 2008








Petitions
for Writ of Mandamus Denied and Opinion Filed May 13, 2008.

 

In The

 

Fourteenth Court of
Appeals

 

NO. 14-07-00630-CV

IN RE GALVESTON CENTRAL APPRAISAL
DISTRICT

 



ORIGINAL PROCEEDING

WRIT OF MANDAMUS



 

and

 

NO. 14-07-00829-CV

IN RE VALERO REFINING-TEXAS, L.P.

 



ORIGINAL PROCEEDING

WRIT OF MANDAMUS



 

O P I N I
O N

In this
consolidated original proceeding, Galveston Central Appraisal District (AGCAD@) seeks mandamus relief from
discovery orders dated May 31 and July 18, 2007, signed by respondent, the
Honorable O.A. ALonnie@ Cox, presiding judge of the 56th District Court in Galveston
County.  Valero Refining-Texas, L.P. (AValero@) seeks mandamus relief from a second
May 31, 2007 discovery order of respondent.  We deny GCAD=s petition for writ of mandamus and
Valero=s petition for writ of mandamus.

                                                               Background

Valero
owns a refinery in Galveston County, Texas.  In 2005, GCAD appraised the
refinery=s fair market value at
$464,000,000.00.  Valero contends its refinery=s fair market value is
$364,100,000.00.  Valero filed a protest of GCAD=s appraised value of the refinery
with the Galveston County Appraisal Review Board (AARB@).  Valero appeared before, and
presented evidence to, the ARB.  The ARB denied Valero=s protest.  Valero appealed the ARB=s final orders to the district court,
alleging that (1) GCAD=s 2005 appraisal of its Texas City refinery exceeded the
refinery=s fair market value, and (2) GCAD
appraised the refinery unequally as compared to sample properties.  

As
explained below, GCAD and Valero have sought discovery from each other, and
each has filed a petition for writ of mandamus seeking relief from respondent=s denial of their respective
discovery requests.

                                                       Standard of Review

In order
to obtain mandamus relief, a relator must show that the trial court clearly
abused its discretion and there is no adequate remedy by appeal.  In re Sw.
Bell Tele. Co., L.P., 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding). 
A trial court abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to constitute a clear and prejudicial error of law.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  The scope
of discovery is a matter of trial court discretion.  In re CSX Corp.,
124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam).  Mandamus
relief is justified when:  

(1) the
appellate court would not be able to cure the trial court=s discovery error, such as when privileged information
or trade secrets would be revealed or production of patently irrelevant or
duplicative documents imposing a disproportionate burden on the producing party
is ordered; 








(2) the
party=s ability to present a viable claim or defense is
severely compromised or vitiated by the erroneous discovery ruling to the
extent that it is effectively denied the ability to develop the merits of its
case; or 

(3) the trial court=s discovery order disallows discovery
which cannot be made a part of the appellate record, thereby denying the
reviewing court the ability to evaluate the effect of the trial court=s error.  

In re Colonial
Pipeline Co., 968
S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (per curiam).  

                                 GCAD=s Petition for Writ of Mandamus

                                                    GCAD=s Discovery Requests

GCAD
sought information from Valero regarding the sale of any refinery in the United
States since January 1, 2003, whether or not Valero was a party to the
transaction.  Valero objected to GCAD=s requests as overly broad,
irrelevant, and not reasonably calculated to lead to the discovery of
admissible evidence.  GCAD filed a motion to compel.  On July 18, 2007, the
trial court denied, in part, GCAD=s motion to compel, limiting production
of information related to the sale of refineries occurring in Galveston County
between 2003 and 2005. 

GCAD
also noticed the deposition of Morgan Stanley & Co. by written questions. 
In 2005, Premcor, Inc. retained Morgan Stanley to provide a fairness opinion in
connection with a merger with Valero Energy Corporation.  GCAD seeks the
underlying documents utilized by Morgan Stanley in its Asum-of-the-parts@ analysis in arriving at an equity
valuation for both Premcor and Valero.  Claiming the request was overly broad,
irrelevant, and not reasonably calculated to lead to the discovery of
admissible evidence, Valero filed a motion to quash, to stay, and for
protection.  On May 31, 2007, the trial court granted Valero=s motion.  








On
August 1, 2007, GCAD filed a petition for writ of mandamus seeking to compel
respondent to (1) vacate his May 31, 2007 order granting Valero=s motion to quash in order to allow
GCAD to obtain the documents described in its deposition on written questions
to Morgan Stanley; and (2) vacate his July 18, 2007 order, and enter an order
compelling Valero to produce information regarding nationwide refinery sales.  

                                                 Sales
Data for Other Refineries

GCAD
claims the trial court abused its discretion by limiting discovery on
information regarding those refinery sales that occurred in Galveston County
between 2003 and 2005.  According to GCAD, there are approximately 150
refineries in the United States.  Only three of those refineries are located in
Galveston County.  Between January 2003 and December 2005, only twenty-five
refinery sales occurred nationwide, and Valero participated, as either
purchaser or seller, in six of those transactions.  There were no refinery
sales in Galveston County during that period.  The most recent sale in
Galveston County was Valero=s purchase of the Texas City refinery from Basis Petroleum in
1997.  

GCAD
seeks from Valero information regarding the sale of any refinery in the United
States since January 1, 2003.  The trial court=s order, however, limited discovery
to only those refinery sales that occurred in Galveston County from 2003 to
2005.  GCAD complains that because there were no refinery sales in Galveston
County during that time period, it needs information on nationwide refinery
sales to address Valero=s claim that the appraised value exceeds fair market value.  See
Tex. Tax Code Ann. ' 42.25 (Vernon 2008) (AIf the court determines that the
appraised value of property according to the appraisal roll exceeds the
appraised value required by law, the property owner is entitled to a reduction
of the appraised value on the appraisal roll to the appraised value determined
by the court.@). 








Valero=s expert, Viewpoint Energy, utilized
the cost method[1] to determine
the market value of its Texas City refinery, while GCAD states that its experts
utilized the income[2] and market
data comparison[3] methods. 
GCAD complains that it has been denied discovery on the two appraisal methods
its experts have chosen and, therefore, the case will be predicated on facts
that remain concealed.  

GCAD=s expert, CB Richard Ellis, Inc.,
prepared a Summary Appraisal Report for Valero=s Texas City refinery (the AEllis Report@).  In order to understand the oil
refinery industry, Ellis engaged John D. R. Wright, an energy consultant, to
provide industry, market, and value information.  Wright also assisted in
providing replacement cost new estimates.  Wright prepared a report on the AFair Market Value of Valero Texas
City Refinery@ (the AWright Report@).

Contrary
to GCAD=s assertion that it was not relying on
the cost approach, the Ellis Report utilized both the cost approach and the
sales comparison approach in estimating the refinery=s value.  The Ellis Report further
states that Wright also indicated that these were the appropriate approaches. 
However, Wright states in his report, that of the three recognized methods for
establishing fair market value, only the income and comparable sales methods
were deemed applicable to the study.  Aside from this unexplained conflict
between GCAD=s appraisal experts, we conclude that GCAD has not shown its experts have
been unable to appraise Valero=s Texas City refinery without information on nationwide
refinery sales.  








According
to the Ellis Report, Wright=s assistance enabled it Ato adequately and competently
appraise the subject property.@  The Ellis Report explained that the Aappraisal sets forth the most
pertinent data gathered, the techniques employed, and the reasoning leading to
the opinion of value.@  Concerning the cost approach estimate, the Ellis Report
states:

A report was made available via discovery; A2004 Solomon Report,@ Bates Stamp Valero 00141-00256.  The
study published by Solomon & Associates is a detailed study of refinery
yields, costs, and operating economics . . . Input data requirements are very
lengthy and detailed; it is typical for an owner [of the refinery] to dedicate
of the order of two person-years of effort per refinery to provide the
information required by Solomon.  This is all said to make the point that
information from these studies are [sic] usually accurate and may be relied
upon.  Valero provided this study and another for 2002 as their response for a
request for the Texas City Refinery yields, costs, and operating economics. 

With
regard to the sales comparison approach, the Ellis report states that GCAD
purchased historical information on refinery sales from Purvin & Gertz
International Energy Consultants from 1982 through 2005.  Moreover, with regard
to land value, the Ellis Report explained that the most similar sales in
Brazoria, Harris, and Galveston Counties were selected.  They were the most
similar in size and waterfront location, and were considered excellent
indicators for the subject=s land value.  Finally, we observe that the Wright Report
compares data from Valero=s Texas City refinery to 16 other Texas refineries.[4]









GCAD
relies on Ex parte Shepperd as authority permitting the discovery of
expert appraisals of property not in the same area as the property at issue. 
513 S.W.2d 813 (Tex. 1974) (orig. proceeding).  In Shepperd, Beever
Farms, whose property was being condemned for the construction of IH-35, sought
discovery of all expert reports related to all properties acquired for the
expansion prepared by experts the State intended to call as witnesses at
trial.  Id. at 814.  The reports were Asought as evidence of possible
inconsistencies in the appraisers= valuation of other properties which
the trial judge in these cases determined to be essentially similar to the
subject properties.@  Id. at 816.  The trial court found the reports were
material for cross-examination and impeachment purposes, and ordered the
appraisals produced.  Id. at 815. 

GCAD
asserts, as in Shepperd, it needs the discovery to test Valero=s expert=s valuation of the refinery.  GCAD
also maintains that it needs the information to defend the valuation it placed
on the Texas City refinery by corroborating information its experts derived
from third-party sources and supporting the analyses of those experts.  GCAD
also believes Valero values its assets differently for ad valorem taxation
purposes than it does for its shareholders.  

However,
in Shepperd, the trial court found that the properties were Aessentially similar to the subject
properties.@  513 S.W.2d at 816.  Here, there has been no such finding.  Moreover,
GCAD admits it does not know if Valero has information on the 19 refinery sales
to which Valero was not a party.  With regard to GCAD=s claim that it needs the discovery
to test Valero=s expert=s values and to corroborate its own experts= reports, a request for document
production Amay not be used simply to explore.@  Dillard Dep=t Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex. 1995)
(orig. proceeding) (per curiam).  Instead, requests must be reasonably tailored
to include only matters relevant to the case.  In re Am. Optical Corp.,
988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam).  








GCAD has
not shown its experts have been unable to competently and adequately appraise
Valero=s property.  GCAD=s request is overly broad and is not
likely to lead to the discovery of admissible evidence.  See Tex. Tax
Code Ann. ' 23.01(b) (Vernon 2008) (A[E]ach property shall be appraised based upon the individual
characteristics that affect the property=s market value.@).  We conclude GCAD has not shown
the trial court abused its discretion in limiting discovery on refinery sales. 

                                                     Morgan
Stanley Documents

GCAD
further contends the trial court abused its discretion by granting Valero=s motion to quash GCAD=s subpoena and notice to take Morgan
Stanley=s deposition by written questions. 
GCAD argues the Morgan Stanley documents involve the valuation of assets,
including Valero=s Texas City refinery, and are relevant to the central issue
hereCthe fair market value of the refineryCand would lead to the discovery of
admissible evidence.  The Morgan Stanley documents were not tendered to the
trial court for its inspection and are not part of the record in this original
proceeding.  We cannot say the trial court abused its discretion in granting
Valero=s motion to quash when those
documents were not before the trial court or before this court.  See Walker,
827 S.W.2d at 837 (stating that the relator has the burden of providing the
appellate court with a sufficient record to establish its right to mandamus
relief).  

                              Valero=s Petition for Writ of Mandamus

                                                     Valero=s Discovery Request








On
September 8, 2006, Valero served a subpoena on GCAD, seeking information
voluntarily submitted as part of the appraisal process to GCAD by BP Products
North America, Inc. (ABP@) and Marathon Ashland Petroleum LLC (AMarathon@) concerning their respective
refineries located in Galveston County.  GCAD did not object to the discovery
on the ground that the information is irrelevant.  Instead, GCAD complained
that Valero=s discovery request sought information that is confidential under Section
22.27 of the Texas Tax Code.[5]  Valero filed
a motion to compel, and set the matter for a hearing.  GCAD did not file a response
to Valero=s motion, but, on January 10, 2007, BP and Marathon, which were not
served with notice of the hearing, objected to the production of the
information as confidential under section 22.27, and sought an order protecting
the information from production.  On January 11, 2007, respondent held a
hearing on Valero=s discovery request.  After hearing argument, respondent
requested that GCAD tender the information to him in camera.  

Valero
served BP and Marathon each with notice of intention to take deposition on
written questions and a subpoena.  BP and Marathon each filed a motion to quash
and for protective order.  On January 24, 2007, GCAD tendered the disputed
discovery to the trial court in camera.  On February 6, 2007, in a post-hearing
letter, Valero attached a proposed protective order that purportedly would
limit the disclosure of any confidential documents.[6] 
On May 31, 2007, the trial court denied Valero=s motion to compel.[7]


On
October 9, 2007, Valero filed a petition for writ of mandamus seeking to compel
respondent to vacate his May 31, 2007 order denying Valero=s motion to compel production of the
documents submitted to GCAD by BP and Marathon.  

                                Confidentiality
of Documents Submitted to GCAD








Valero
argues the trial court abused its discretion by denying the motion to compel
the production of documents submitted to GCAD by BP and Marathon.  Valero
asserts it needs the discovery relating to the BP and Marathon refineries
because Section 42.26(a)(3) of the Texas Tax Code requires comparison of Valero=s property to comparable properties
to determine whether an appraisal district has appraised properties unequally. 
See Tex. Tax Code Ann. ' 42.26(a)(3) (Vernon 2008).[8] 
Valero contends it is reasonably probable the BP and Marathon properties are
comparable to, similarly situated to, or of the same general kind or character
as its property for the purpose of determining the median appraised value. 
Moreover, because GCAD stated in its objections that A[GCAD] and its contract valuation
engineers rely on information provided voluntarily by property owners on the
expectation of confidentiality, in order to assist in the process of valuing
property accurately,@ Valero contends the information it seeks is relevant and
will likely lead to the discovery of admissible evidence.  See Tex. R.
Civ. P. 192.3.  

GCAD,
BP, and Marathon argue the information sought by Valero is made confidential by
Section 22.27 of the Tax Code, which states:  

(a) Rendition statements, real and personal property
reports, attachments to those statements and reports, and other information the
owner of property provides to the appraisal office in connection with the
appraisal of the property, including income and expense information related to
a property filed with an appraisal office and information voluntarily disclosed
to an appraisal office or the comptroller about real or personal property sales
prices after a promise it will be held confidential, are confidential and not
open to public inspection.  The statements and reports and the information they
contain about specific real or personal property or a specific real or personal
property owner and information voluntarily disclosed to an appraisal office
about real or personal property sales prices after a promise it will be held
confidential may not be disclosed to anyone other than an employee of the
appraisal office who appraises property except as authorized by Subsection (b)
of this section.

Tex. Tax Code Ann. ' 22.27(a).  








Section
22.27(b), however, provides information made confidential by subsection (a) may
be disclosed Ain a judicial or administrative proceeding pursuant to a lawful subpoena;
. . .@  Tex. Tax Code Ann. ' 22.27(b)(1).  Valero argues it has
met both requirements of section 22.27(b)(1) because the tax suit is a judicial
proceeding, and GCAD never disputed that Valero served it with a lawful
subpoena.  

Under
Section 25.195(a) of the Tax Code, a property owner is entitled to inspect the
records in the possession of the appraisal district, including, except as
provided by section 25.195(b), material or information obtained under section
22.27, which is used in making appraisals relating to that property.  Tex. Tax
Code Ann. ' 25.195(a) (Vernon 2008).  However, GCAD, BP, and Marathon contend that
subsection (b) of section 25.195 does not permit a commercial property owner
such as Valero to obtain information voluntarily given to a central appraisal
district under section 22.27, even if one of the enumerated exceptions to the
confidentiality of the rendition information is applicable.  See Tex.
Tax Code Ann. ' 25.195(b).  Specifically, under section 25.195(b), A[t]he owner of property other than
vacant land or real property used for residential purposes or the owner=s agent may not inspect any material
or information obtained under Section 22.27.@  Id.  








No Texas
court of which we are aware has addressed the interplay of sections 22.27(b)
and 25.195(b) of the Tax Code.  Prior to the addition of subsection (b) to
section 25.195, and the amendment of subsection (a) to provide for the express
reference to section 22.27 in 1997, the Texas Attorney General construed
sections 22.27 and 25.195 as giving property owners a special right of access
to confidential information that was filed by others under section 22.27 and
used to appraise the owner=s property.  Tex. Att=y Gen. ORD-550 (1990); Tex. Att=y Gen. ORD-500 (1988).[9] 
After the Texas Legislature added subsection (b), the Attorney General opined
that section 25.195(b) limits Athe right of access to information filed by others and made
confidential under section 22.27 to owners of vacant land and residential real
property, thus precluding owners of real property used for commercial
purposes from obtaining such information.@  Op. Tex. Att=y Gen. No. JC-0424 (2001) (emphasis
added).  

The
parties do not contend, and we do not find, that sections 22.27(b) and
25.195(b) are in conflict but, instead, may be harmonized.  Section 25.195(b)
merely prohibits the disclosure of confidential information permitted under
section 22.27(b) to commercial property owners.  Even if these two statutes
were in conflict, we must hold that 25.195(b) prevails because it was added in
1997, after 22.27(b) was added in 1979 and effective in 1982.  See Tex.
Gov=t Code Ann. ' 311.025 (Vernon 2005) (providing
that if statutes enacted at the same time or different sessions of the
legislature are irreconcilable, the statute with the latest enactment date
prevails).  We conclude the trial court did not abuse its discretion in denying
Valero=s motion to compel.[10] 


                                                                              

 

 

 








Conclusion

Neither
GCAD nor Valero has established its entitlement to the extraordinary relief of
a writ of mandamus.  Accordingly, we deny both GCAD=s and Valero=s respective petitions for writ of
mandamus.

 

 

 

/s/        John S. Anderson

Justice

 

 

 

 

Petitions Denied and Opinion filed
May 13, 2008.

Panel consists of Justices Anderson,
Fowler, and Frost.









[1]   See Tex. Tax Code Ann. ' 23.011 (describing the cost method of appraisal)
(Vernon 2008).





[2]   See Tex. Tax Code Ann. ' 23.012 (describing the income method of appraisal)
(Vernon 2008).





[3]   See Tex. Tax Code Ann. ' 23.013 (describing the market data comparison method
of appraisal) (Vernon 2008).





[4]   Those 16 Texas refineries compared in the Wright
Report are Marathon Ashland, Texas City, Texas; Valero Enery Corp., Houston,
Texas; Valero Energy Corp., Three Rivers, Texas; Crown Central, Houston, Texas;
Valero Energy Corp., Corpus Christi, Texas; CITGO, Corpus Christi, Texas; Total
SA, Port Arthur, Texas; ConocoPhillips, Sweeney, Texas; Premcor Refining Group,
Port Arthur, Texas; Flint Hills Resources, Corpus Christi, Texas; Shell Deer
Park Refining, Deer Park, Texas; Exxon Mobile, Beaumont, Texas; BP, Texas City,
Texas; and Exxon Mobile, Baytown, Texas. 





[5]   Tex. Tax Code Ann. ' 22.27 (Vernon 2001).





[6]   The proposed confidentiality order is not included
in the mandamus record.





[7]   There is no order in the mandamus record ruling on
BP=s and Marathon=s
motions to quash.





[8]   Section 42.26(a)(3) provides:  

 

(a) The district court shall grant relief on the
ground that a property is appraised unequally if:

                                                                    *       
*        *

(3) the appraised value of the property exceeds the
median appraised value of a reasonable number of comparable properties
appropriately adjusted.

 

Tex. Tax Code Ann. '
42.26(a)(3).  





[9]   The 1987 version of section 22.27(a) stated: AAfter the chief appraiser has submitted the appraisal
records to the appraisal review board as provided by Section 25.22(a) of this
code, a property owner or his designated agent may inspect the appraisal
records relating to property of the property owner, together with supporting
data and schedules used in making appraisals for the appraisal records,
relating to that property.@  Act of Apr.
29, 1987, 70th Leg., R.S., ch. 38 '1,
1987 Tex. Gen. Laws 72 (current version at Tex. Tax. Code Ann. ' 22.27(a)).





[10]   In a post-submission brief, Valero argues that
GCAD, BP, and Marathon have waived any reliance on section 25.195 because they
did not specifically argue its applicability in the trial court.  Valero
essentially posits that any discussion of section 22.27 should be in a vacuum
without any mention of section 25.195.  We reject Valero=s contention.  Instead, GCAD, BP, and Marathon=s argument based on section 25.195, which expressly
refers to section 22.27, is subsumed by their broad confidentiality objections
based on section 22.27.