**In re VAN WATERS & ROGERS, INC., et al., Relators.**

No. 00–1185.

Supreme Court of Texas.

Nov. 8, 2001.

Joseph A. Garnett, Sheehy Serpe & Ware, Lansford O. Ireson, Gina Lucero Miller, Ireson & Weizel, James L. Moore, Baker & Hostetler, Bradley A. Jackson, Ben L. Reynolds, Royston Rayzor Vickery & Williams, Houston, Chester J. Makowski, Royston Rayzor Vickery & Williams, Robert G. Newman, San Antonio, Andrew Schirrmeister, III, Schirrmeister Ajamie, Houston, Norton A. Colvin, Jr., Rodriguez Colvin & Chaney, Brownsville, G. Don Schauer, Schauer & Simank, Corpus Christi, Karen Patterson Freeman, James Samuel Cowan, Akin Gump Strauss Hauer & Feld, Houston, David G. Oliveira, Roerig Oliveira & Fischer, Brownsville, Cindy A. Lopez Garcia, Garcia Law Firm, Harlingen, Robert E. Morse, III, Kelly Dick Brown, Crain Caton & James, Robert Scott, Valerie Ruth Vance, Abrams Scott & Brickley, Houston, Vic Fields, Vic Fields & Associates, Austin, for relators.

Robert G. Newman, W. Wendell Hall, Lisa Ann Shub, Fulbright & Jaworski, San Antonio, Marcy H. Greer, Fulbright & Jaworski, Austin, for Waters & Rogers, Inc.

Keith C. Livesay, Law Offices of Keith C. Livesay, Francisco J. Rodriguez, Hector E. Garcia, Ezequiel Tovar, Rodriguez Pruneda Tovar Calvillo & Garcia, McAllen, E. James Rausch, Rausch Law Office, Grandury, Karen K. Maston, Baker & Botts, Houston, James B. Galbraith, McLeod Alexander Powel & Apffel, Galveston, Arthur R. Almquist, Mehaffy & Weber, Houston, William A. Abernethy, M.W. Meredith, Jr., Meredith Donnell & Abernethy, Corpus Christi, Kay Andrews, Brown McCarroll & Oaks Hartline, Austin, Robert Valadez, Shelton & Valadez, San Antonio, Eduardo R. Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, Michael Morgan Gibson, Bayko Gibson Carnegie Hagan Schoonmaker & Meyer, Houston, Jeffrey D. Roerig, Roerig Oli-

veira & Fisher, Brownsville, Andrew S. Hanen, Lawrence J. West, Hanen Alexander Johnson & Spalding, G. Joe Ellis, Woodard Hall & Primm, Houston, Raymond Alan Cowley, Rodriguez Colvin & Chaney, McAllen, Adrian Rafael Martinez, Meredith Donnell & Abernethy, Corpus Christi, Joyce B. Margrace, Baker & Hostetler, Houston, for respondent.

PER CURIAM.

The fifteen relators in this original mandamus proceeding are defendants in a seven-year-old mass-tort suit involving 448 plaintiffs.[1] Relators seek relief from the trial court's orders abating almost all discovery and allowing the plaintiffs' counsel to pick which plaintiffs' claims will be tried first. Many of the relators and other defendants who have since settled sought the same relief more than three years ago in mandamus petitions first to the court of appeals, which denied relief without opinion,[2] and then to this Court. We denied relief "without prejudice" to give the trial court "the opportunity to reconsider the abatement order"[3] in light of our then-recent opinion in *In re Colonial Pipeline Co.*[4] Relators immediately moved the trial court for such reconsideration, but after the trial court delayed ruling on their motion for a year, relators again petitioned the court of appeals for mandamus relief. While relators' petition was pending there, the trial court denied relators' motion. The court of appeals conditionally granted partial relief,[5] and relators have now returned here. We grant additional relief.

The underlying litigation was filed on August 25, 1994, by 454 plaintiffs (a few of whose claims have since been dismissed) who had worked at the Parker–Hannifin Corporation's O-ring seal manufacturing facility in McAllen. They alleged that they had suffered personal injuries from exposure to what they called a "toxic soup" of chemicals in the plant environment, chemicals they claimed were made by or supplied to the plant by the 55 defendants originally named in the suit. After the case was removed to federal court and remanded, the defendants requested discovery from the plaintiffs by various means, most of which the plaintiffs simply ignored. Eventually, most of the plaintiffs produced some information regarding their claimed injuries and the possibly causative chemicals, but almost none of the information was specific enough to be meaningful. For example, in response to the following interrogatory—

> Please state the name and address of each and every doctor, physician or other medical practitioner who has attributed your alleged injury made the basis of this lawsuit to exposure to the defendants' products, including the dates of treatment or examination of each such doctor, physician or other medical practitioner, and the name or identity of the product to which your alleged injury is attributed.

—the plaintiffs uniformly answered they did not recall. When the defendants sought to depose the plaintiffs, the plaintiffs moved to try a few of the claims first and restrict discovery to them. On No-

1. *Elias Acevedo, et al. v. Union Carbide Chemicals & Plastics, Inc., et al.,* Cause No. C–3955–94–G (370th Dist. Ct., Hidalgo County, Tex., filed Aug. 25, 1994).

2. *In re Van Waters & Rogers, Inc., et al.,* No. 13–98–00046–CV (Tex.App.—Corpus Christi Feb. 26, 1998) (orig.proceeding).

3. *In re Van Waters & Rogers, Inc.,* 988 S.W.2d 740, 741 (Tex.1998) (per curiam).

4. 968 S.W.2d 938 (Tex.1998).

5. *In re Van Waters & Rogers, Inc.,* 31 S.W.3d 413, 421 (Tex.App.—Corpus Christi 2000).

vember 20, 1997, the trial court ordered the plaintiffs' counsel to select twenty plaintiffs to go to trial and limited discovery to them, to persons designated by them as having knowledge of relevant facts, and to non-parties. The court also permitted the defendants to take additional depositions on a showing of "particularized need", which it did not define. When the defendants attempted to obtain discovery from non-parties unrelated to the twenty designated plaintiffs, the court on December 23, 1997, ordered that all discovery, whether from parties or non-parties, be limited to the twenty designated plaintiffs.

The defendants petitioned for relief from these orders, and while their petition was pending in this Court, we held in *In re Colonial Pipeline Co.* that a similar abatement of discovery was a clear abuse of discretion.[6] There, over three thousand plaintiffs sued three defendants alleging that they had been injured when four pipelines ruptured releasing hazardous substances.[7] Concerning the trial court's nearly complete abatement of discovery, we wrote:

> In this case, relators are precluded from obtaining even the most basic information from 3,265 plaintiffs until after the claims of the initial trial group of ten are resolved. Given that three and a half years have already passed since the incident underlying this case occurred, it could be many months or even years before any discovery is available. Unfortunately but inevitably, memories fade with time and evidence may be lost or corrupted. Documents may be destroyed in compliance with document retention programs. More importantly,

there were four different pipelines with different substances involved. Certain illnesses or damage may conceivably be attributable to one but not all of the substances involved. The defendants have not been provided, among other things, with descriptions of the plaintiffs' alleged injuries, the names of treating physicians, or the names of the substances that caused the alleged injuries. Without discovery of basic medical information from all the plaintiffs, each defendant is put in the position of preparing to defend itself against claims that may not involve the substance that was contained in its pipeline. While we encourage trial courts to manage litigation actively, to try test cases to establish benchmark results, and to prohibit needless or repetitive discovery in thousands of cases that might never be tried, "[e]ach defendant is entitled to discover whether there has been a medical determination that an illness has been caused by that defendant's product." [*Able Supply Co. v.*] *Moye*, 898 S.W.2d [766,] 770 [ (Tex.1995) ]. We therefore conclude that the trial court's order abating all discovery from such a large group of parties constitutes an abuse of discretion.[8]

Rather than review the similar abatement of discovery in this case, which was ordered without benefit of our views in *Colonial Pipeline*, we denied relators' petition for mandamus to allow the trial court to reconsider its rulings.[9] On October 23, 1998, eight days after our opinion issued, relators moved the trial court for such reconsideration. The court held several hearings on that motion and others that were filed, and allowed the plaintiffs' coun-

---

**6.** 968 S.W.2d 938, 942 (Tex.1998).

**7.** *Id.* at 940.

**8.** *Id.* at 941–942.

**9.** *In re Van Waters & Rogers, Inc.,* 988 S.W.2d 740, 741 (Tex.1998).

sel to designate a new group of twenty-five plaintiffs to go to trial, only one of whom was included in the first twenty. But the court did not rule on relators' motion for reconsideration despite relators' multiple requests that it do so.

Nearly a year passed, and relators again sought relief by mandamus. At oral argument in the court of appeals, relators' counsel was handed the trial court's November 4, 1999 order denying the motion to reconsider. The order recited that defendants had been afforded more discovery than the defendants in *Colonial Pipeline*, and that additional discovery could delay trial—which, of course, had already been delayed five years with almost no discovery. The court of appeals concluded that the trial court had clearly abused its discretion by refusing to require the plaintiffs to answer the interrogatory quoted above, which requested essentially the same information that we required the plaintiffs to provide in *Moye* and *Colonial Pipeline*.[10] But the court of appeals refused to direct the trial court to permit any further discovery, concluding:

> We do not believe the supreme court in *Colonial Pipeline* intended to prohibit trial courts from selecting small groups of trial plaintiffs to serve as test cases while abating discovery as to the remaining plaintiffs in order to manage mass tort cases. Indeed, the supreme court has previously recognized the importance of allowing trial courts to manage their own dockets in such a manner. *See Polaris Inv. Management Corp. v. Abascal*, 892 S.W.2d 860, 861 (Tex. 1995).[11]

The court of appeals refused to disturb the trial court's orders abating other discovery and allowing the plaintiffs' counsel to pick claims to go to trial without judicial oversight or meaningful input from the defendants.[12]

Relators here argue that the trial court has simply refused to follow our decision in *Colonial Pipeline* and has unduly delayed reconsidering its orders as we requested. We agree. Neither the trial court, nor the plaintiffs as the real parties in interest, have suggested any basis for this delay. Furthermore, as the court of appeals concluded, the plaintiffs have failed to show why after seven years of litigation they should not be required to provide the same basic information regarding their individual injuries and the causative chemicals that we required in *Moye* and *Colonial Pipeline*. But in refusing to direct the trial court to permit additional discovery, the court of appeals misread our opinion in *Polaris*. There we held that a trial court's abatement of discovery for seven *months* in a mass-tort case would not be reviewed by petition for mandamus.[13] Nothing in our opinion suggests that an improper abatement of discovery can never be reviewed, even after seven *years*. While it is certainly true that a trial court must be given latitude in managing discovery and preparing a case for trial, especially a case as complex as this, that latitude is not unbounded. Here, as in *Colonial Pipeline*, the parties now face the very real threat that after seven years evidence will be destroyed, witnesses will die or disappear, and memories will be impaired. A blanket abatement of discovery cannot be justified by the goal of an orderly trial process when not one plaintiff has yet gone to trial. To abate discovery for years

---

**10.** 31 S.W.3d at 419–421.

**11.** *Id.* at 418.

**12.** *Id.* at 418–419.

**13.** 892 S.W.2d 860, 862 (Tex.1995) (per curiam).

without justification is a clear abuse of discretion.

Furthermore, in denying relators relief from the trial court's order allowing the plaintiffs' counsel to select the claims to be tried first, the court of appeals failed to follow our opinions in *In re Ethyl Corp.*[14] and *In re Bristol–Myers Squibb Co.*[15] In those cases we recognized that in mass-tort cases the plaintiffs' claims may be tried a few at a time, but we set out factors for trial courts to consider in determining what claims to consolidate for trial, including: whether the plaintiffs to be tried together worked in the same place, at similar jobs, during similar time periods; whether their diseases or injuries are or were similar, and they are living or deceased; whether they are represented by the same counsel; and the status of discovery.[16] Another consideration is the maturity of the tort.[17] We admonished trial courts to be "very cautious both in choosing the cases that are initially set and in proceeding with the actual trial to ensure that the process remains fair to all."[18] In the present case, the trial court did not consider the factors we prescribed; indeed, it could not have done so because it has prevented much of the information pertinent to those factors from being adduced through discovery. While its order permitted the defendants to object to the plaintiffs selected for trial, their bases for doing so have been restricted by their limited access to discovery. To abate meaningful discovery and allow the plaintiffs' counsel to select what claims will be tried, as the trial court has done, is not a process "fair to all".

As in *Colonial Pipeline*, the trial court's discovery order denies defendants "discovery that goes to the heart of the litigation."[19] Moreover, the continued abatement of the discovery process after seven years of litigation threatens that evidence critical to the claims made will become unavailable before discovery can be conducted. For these reasons we conclude as we did in *Colonial Pipeline* that relators do not have an adequate remedy by appeal.[20]

To avoid further delay, we direct the trial court to: vacate its orders of November 20, 1997, December 23, 1997, and November 4, 1999, within five days of the date of this opinion; permit relators to proceed with discovery from the plaintiffs under the Rules of Civil Procedure without delay; and determine, after adequate discovery, following the procedures we have laid out in *Ethyl* and *Bristol–Myers*, how the plaintiffs' claims should proceed to trial. The writ will issue only if the trial court fails to comply. Tex.R.App. P. 59.1.

14. 975 S.W.2d 606 (Tex.1998).

15. 975 S.W.2d 601 (Tex.1998).

16. *Ethyl*, 975 S.W.2d at 611.

17. *Bristol–Myers*, 975 S.W.2d at 603.

18. *Ethyl*, 975 S.W.2d at 614.

19. 968 S.W.2d at 942.

20. 968 S.W.2d at 942 (citing *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992) (stating that "a denial of discovery going to the heart of a party's case may render the appellate remedy inadequate")).