IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 03-0777

════════════

 

In re Van Waters &
Rogers, Inc., Relator

 

 

════════════════════════════════════════════════════

On Petition for Writ of Mandamus

════════════════════════════════════════════════════

 

 

PER
CURIAM

 

 

The issue in this mandamus proceeding is whether
the trial court erroneously consolidated for trial the workplace toxic tort
claims of twenty plaintiffs against nine defendants.  Because we hold that the trial court abused
its discretion and the defendants have no adequate remedy by appeal, we
conditionally grant mandamus relief.

The underlying litigation was filed in 1994 by 454
plaintiffs against approximately fifty-five defendants.  The plaintiffs are former employees of the
Parker-Hannifin Corporation who worked at Parker=s
O-ring seal manufacturing plant in McAllen, Texas.  The plaintiffs, all represented by the same
counsel, allege injuries caused by workplace exposure to a combination of
chemicals and products B
to which they refer to as a Atoxic
soup.@  Plaintiffs allege that the chemicals were
made or supplied to the plant by the defendants.  The trial court consolidated the claims of
twenty of the plaintiffs and set the claims for trial.  Nine defendants seek relief from the
consolidation order.

Each of the plaintiffs in the twenty consolidated
cases was employed at the McAllen plant when it closed its doors in 1992, but
the plaintiffs= start
dates at the plant range from 1975 to 1988. 
The twenty plaintiffs held a combined thirty-five different jobs during
their tenures at the plant, and most of the jobs were shared by only a few
plaintiffs.  No single job was held by
all twenty plaintiffs.  The
Parker-Hannifin facility was also comprised of several buildings, and workers
with different jobs worked in different areas of the plant.  Employees were often segregated from other
areas, and the plant had multiple air conditioning systems and downdraft tables
that limited chemical exposure to particular areas.  The twenty plaintiffs allege an aggregate of
more than fifty-five injuries or symptoms, many of which are not shared, but
the most common being headaches, eye irritation, nose irritation, skin
irritation, and throat irritation.  

This is the third petition for writ of mandamus we
have considered in this case.  In 1997,
the trial court issued three orders: 
1) consolidating twenty plaintiffs for trial; 2) limiting the
defendants=
discovery to those twenty plaintiffs and abating all discovery for the
remaining 434 plaintiffs; and 3) denying the defendants= request to compel an answer to an
interrogatory that would have revealed all physicians who linked any of the
plaintiffs= injuries
to exposure to the defendants=
products.  The defendants sought
mandamus relief regarding each of the three orders.  We denied all relief without prejudice to
give the trial court an opportunity to reconsider the discovery abatement order
in light of In re Colonial Pipeline Co.,[1]
which was issued while the petition was pending.[2]  We also suggested that the trial court
reconsider the interrogatory order should it determine that discovery should
not be abated.[3]  We did not address the consolidation issue at
that time.

The defendants asked the trial court to reconsider
the previous orders in light of In re Colonial Pipeline Co.  After almost a year, the trial court had not
ruled on the motion, but had allowed plaintiffs=
counsel to submit a different group of plaintiffs for trial.  The defendants again sought mandamus relief,
alleging insufficient discovery and improper consolidation.  The court of appeals granted partial relief
as to the defendants=
request that plaintiffs supplement their answers to the interrogatory
concerning their physicians.[4]  This Court granted further relief by
directing the trial court to vacate its orders that abated discovery and
allowed the plaintiffs to select the claims to be tried first.[5]  With regard to the consolidation issue, we
explained that the trial court should consider the factors established in In re Ethyl Corp.[6]
and In re Bristol-Myers Squibb,[7]
and could do so only after adequate discovery was completed.[8]

Plaintiffs subsequently moved to consolidate for
trial the original twenty plaintiffs from the first mandamus.  A sixteen-page chart of the plaintiffs and
their job histories and symptoms was submitted in support of the motion.  The defendants objected to the nominated
group of plaintiffs, arguing that only one plaintiff should be tried at a
time.  The trial court granted the
plaintiffs= motion
and issued the current consolidation order, stating that the court was Aof the opinion the trial Plaintiffs . .
. [meet] the criteria enunciated by the Supreme Court@
and should be consolidated for trial. 
The defendants requested relief from the court of appeals, which was
denied in a short per curiam opinion.

In determining whether various claims are
appropriate for consolidation, Athe
dominant consideration in every case is whether the trial will be fair and
impartial to all parties.@[9]  Consolidation should be avoided if it would
cause A>confusion or prejudice as to render
the jury incapable of finding the facts on the basis of the evidence.=@[10]  If an injustice will result from consolidated
trials, a trial court Ahas
no discretion to deny separate trials.@[11]


To aid in the determination of whether
consolidation is appropriate in a mass tort case alleging exposure in a
workplace, this Court in Ethyl adopted the AMaryland
factors@:  (1) whether the plaintiffs shared a common
work site; (2) whether the plaintiffs shared similar occupations; (3) whether
the plaintiffs had similar times of exposure; (4) whether the plaintiffs have a
similar type of disease; (5) whether plaintiffs are alive or deceased; (6) the
status of discovery; (7) whether all plaintiffs are represented by the same
counsel; (8) the type of cancer alleged, if any; and (9) the type of products
to which the plaintiffs were exposed.[12]  In Ethyl we explained the considerations
in applying these factors:

 

As the number of Maryland factors that different
cases have in common increases, the number of those claims that can be tried
together may increase.  But there is no
mathematical formula, and some of the Maryland factors should be given more
weight than others.  The maximum number
of claims that can be aggregated is not an absolute, and the particular
circumstances determine the outer limits beyond which trial courts cannot go.[13]

 

A trial court must also Aweigh
the risk of prejudice or confusion against economy of scale.@[14]  

Consolidation is not improper merely because some
factors indicate that dissimilarities exist within the consolidated
claims.  Rather, it is vital that a party
seeking relief from a consolidation order establish how the differences among
the consolidated claims will materially affect the fairness of a trial.[15]

A further consideration is the maturity of the
alleged tort.[16]
In In re Bristol-Myers Squibb, we
instructed lower courts to Aproceed
with extreme caution@
when consolidating claims of immature torts.[17]
 A tort is mature only when A>there
has been full and complete discovery, multiple jury verdicts, and a persistent
vitality in the plaintiffs=
[contentions].=@[18]  Because no Atoxic
soup@ case has
ever been tried or appealed in Texas, the tort is immature.  Hence, the trial court has less discretion to
consolidate dissimilar claims and must proceed with extreme caution.  With this in mind, we turn to the application
of the Maryland factors to this case.

1.         Common
Work Site

Plaintiffs argue that each of the
plaintiffs worked at the same facility and, therefore, shared a common work
site.  The defendants counter that the
plant was large and had several separate work areas B
even separate buildings B
that constitute separate work sites. 
Determining what constitutes a common work site does not turn merely on
location, but on the similarity of exposures that occurred at a particular
location in order to simplify proof of product identification.[19]  Treating the Parker-Hannifin facility as a
single work site would greatly complicate product identification in this case
because the evidence shows that different mixtures of chemicals were used in
different areas of the plant.  Use of
multiple air conditioning and ventilation systems and downdraft tables reduced
the likelihood of exposure to the same chemicals in different areas of the
plant.  The twenty consolidated
plaintiffs selected for trial worked in different areas and have presented no
evidence that they were exposed to the same injury-producing chemical
mixtures.  Because the areas of the plant
in which the plaintiffs worked were so diverse, the Parker-Hannifin facility
contains multiple work sites.  

More importantly, the consolidation for trial of
the claims of workers from different self-contained sites in the plant will
likely unduly prejudice the defendants. 
Juror confusion is likely because the twenty different plaintiffs will
necessarily offer proof of exposure to different chemicals that occurred in
different parts of the plant, leading to a spider web of causation evidence
linking the numerous defendants to different areas of the plant.  This factor therefore weighs against consolidation.

2.         Similar Occupations

There is no dispute that the twenty plaintiffs had
dissimilar occupations.  In Ethyl,
we concluded that the fact that the plaintiffs held different jobs was not
enough to warrant relief because the record did not show that the different
jobs Aresulted
in differing exposure levels.[20]  But the issue in Ethyl was whether
different occupations, such as pipe fitters and insulators, suffered different
levels of exposure to a single toxin - asbestos.  In the instant case, the issue is not
different exposure levels to a single chemical, but rather, exposure to
different chemicals altogether.  Numerous
possible toxins are alleged to have caused the plaintiffs= injuries.  Further complicating the matter is that the
plaintiffs do not allege that these chemicals individually caused the assorted
harms, but instead were mixed into a toxic soup, with various harmful
combinations of toxins from many different defendants.

Consolidating claims under these facts will
undoubtedly lead to juror confusion, unfairly prejudicing the defendants.  Not only would jurors be forced to keep track
of various exposure levels, but the jury would also need to follow the varying
exposures to the fifty-five original defendants=
chemicals and the many more chemical combinations used at different work
sites.  Because of these facts, this
factor weighs against consolidation of the twenty plaintiffs= claims.

3.         Time
of Exposure

The time of exposure factor has two
aspects, the dates on which the exposure occurred and the length of exposure.[21]

a.         Dates of Exposure

The twenty plaintiffs began working at the plant
during a range of thirteen years, from 1975 to 1988.  Ethyl involved exposure dates varying
by several decades, yet we concluded there was little evidence of prejudice or
confusion of the jury.[22]  But here, evidence in the record indicates
that, during different periods of time, different chemicals were used at the
plant.  Because the chemicals used at the
plant changed periodically, and many of the plaintiffs worked at the plant on
different dates, this factor weighs against consolidation. 

b.         Length of Exposure

This factor also weighs against consolidation
because the duration of the alleged exposure differs significantly among some
of the trial plaintiffs.  The plaintiffs
started working during a thirteen-year span, and all the plaintiffs stopped
working at the plant in 1992.  Thus, a
worker who began employment in 1975 could likely have more than four times the
duration of exposure than a worker who started in 1988, though this discrepancy
is less of a concern than exposure to entirely different chemical combinations.


4.         Similar
Injury 

The proposed twenty plaintiffs
allege more than fifty-five physical ailments, and no two plaintiffs have
identical symptoms.  Some plaintiffs
complain of headaches, while others allege ailments ranging from nausea to
insomnia.  At least one plaintiff
complains of a lump in her breast.  In Ethyl
and Bristol-Myers, we held that numerous and different injuries
alone do not justify mandamus relief.[23]  In both cases, we were concerned not with the
mere fact that different injuries existed, but with whether those injuries had
different etiologies.  The plaintiffs in Ethyl
asserted injuries including asbestosis, mesothelioma,
and lung cancer, all of which were allegedly caused by exposure to
asbestos.  Similarly, in Bristol-Myers,
the different injuries were all allegedly caused by breast implants.  In the present case, however, there is
evidence indicating that the various injuries were caused by exposure to
numerous chemicals and chemical combinations. 
The evidence reflects exposure to different chemicals by virtue of
working in different work sites, and this dissimilarity is compounded by
evidence of vastly different injuries. 
There is no allegation or evidence that the different injuries stem from
the same sources.  Therefore, this factor
weighs against consolidation.

5.         Living
or Deceased

Because each of the twenty
plaintiffs is living, this factor weighs in favor of consolidation.

6.         The
Remaining Factors          

The remaining Maryland factors,
which include the status of discovery and whether the plaintiffs are
represented by the same counsel, also favor consolidation of these twenty
plaintiffs.  However, we have held that
these factors are far less important than the other considerations identified
by the Maryland criteria.[24]


Although some factors favor consolidation of this
group of plaintiffs, the most critical factors weigh against
consolidation.  Most importantly, because
the plaintiffs worked at what were effectively different work sites, and thus
were exposed to entirely different chemical mixtures, the other dissimilarities
involving disease and occupations are magnified.  Establishing a defendant=s liability based on one plaintiff=s exposure to a certain chemical
combination will not aid in establishing a different defendant=s liability for another plaintiff=s exposure to an entirely different
mixture of chemicals.  Rather, it would
only serve to prejudice and confuse a jury. 
Although some plaintiffs could appropriately share causation evidence by
claiming exposure to the same chemical combinations and could therefore be
consolidated for trial, not all twenty plaintiffs here could make such a
claim.  Because analysis of the evidence
using the factors adopted in Ethyl and Bristol-Myers demonstrates
that significant juror confusion and undue prejudice would result from a trial
of this particular group of twenty plaintiffs, we hold that the trial court
abused its discretion in consolidating this group for trial. 

Having concluded the trial court abused its
discretion, we now must determine whether the defendants nevertheless have an
adequate remedy by appeal.  Absent
extraordinary circumstances, mandamus will not issue unless defendants lack an
adequate appellate remedy.[25]  An appeal is inadequate when parties are in
danger of permanently losing substantial rights.[26]  Such a danger arises when the appellate court
would not be able to cure the error, when the party=s
ability to present a viable claim or defense is vitiated, or when the error
cannot be made part of the appellate record.[27]


Because most consolidation orders do not threaten
a defendant=s
substantial rights, mandamus typically does not lie from a trial court=s consolidation order.[28]  But if Aextraordinary
circumstances@ are
present that make an ordinary appeal inadequate, mandamus relief may be
warranted.[29]  

Such extraordinary circumstances are present in
this case because an appellate court could not remedy the likely juror
confusion in a consolidated trial of these twenty plaintiffs= claims.  Given the totally unrelated claims of
plaintiffs exposed to entirely different chemicals produced by different
defendants, consolidation risks the jury finding against a defendant based on
sheer numbers, on evidence regarding a different plaintiff, or out of
reluctance to find against a defendant with regard to one plaintiff and not
another.  The defensive theories as to
many of these plaintiffs may also differ given the varying sources of
exposure.  The confusion created by
multiple defensive theories is augmented in this case because there are
fifty-five original defendants and at least nine remaining defendants.  Similarly, confusion and prejudice could
subsume the valid claim of a plaintiff based on an unrelated flaw or defense
applicable to a different plaintiff=s
claim.  Juror confusion and prejudice,
under these facts, is almost certain, and it would be impossible for an
appellate court to untangle the confusion or prejudice on appeal.[30]

We conclude that the consolidation of these twenty
plaintiffs= claims
against the defendants was an abuse of discretion for which there is no
adequate remedy by appeal.  Whatever
advantage may be gained in judicial economy or avoidance of repetitive costs is
overwhelmed by the greater danger an unfair trial would pose to the integrity
of the judicial process.  Therefore,
without hearing oral argument,[31]
we order the trial court to vacate its January 2, 2003 order consolidating the
claims of the twenty plaintiffs.  The
writ will issue only if the trial court fails to comply.

 

 

OPINION DELIVERED: September 3, 2004











[1] 968 S.W.2d 938 (Tex. 1998).





[2] In re Van Waters & Rogers,
Inc., 988 S.W.2d 740, 741 (Tex. 1999) (Van Waters I).  





[3] Id.





[4] In re Van Waters & Rogers,
Inc., 31 S.W.3d 413, 421 (Tex. App.BCorpus Christi 2000, orig. proceeding).  





[5] In re Van Waters & Rogers,
Inc., 62 S.W.3d 197, 201 (Tex. 2001) (Van Waters II).  





[6] 975 S.W.2d 606, 611 (Tex. 1998).





[7] 975 S.W.2d 601, 603 (Tex. 1998).





[8] Van Waters II, 62 S.W.3d at
201.





[9] Ethyl, 975 S.W.2d at 614-15.





[10] Id. at 612 (quoting Consorti v. Armstrong World Indus., Inc., 72
F.3d 1003, 1008 (2d Cir. 1995)). 





[11] Id. at 610.





[12] Id. at 611. 





[13] Id.





[14] Id.





[15] Bristol-Myers, 975 S.W.2d at
603-04.





[16] Ethyl, 975 S.W.2d at 610.





[17] Bristol-Myers, 975 S.W.2d at
603. 





[18] Id. (quoting McGovern, An
Analysis of Mass Torts for Judges, 73 TEX.
L. REV. 1821, 1843 (1995)). 





[19] N. Am. Refractory Co. v. Easter,
988 S.W.2d 904, 917-18 (Tex. App.BCorpus Christi 1999, pet. denied); Owens-Corning
Fiberglas Corp. v. Martin, 942 S.W.2d 712, 717 (Tex. App.BDallas 1997, no pet.). 





[20] 975 S.W.2d at 615. 





[21] Id.





[22] Id. at 616.





[23] Id. at 617; Bristol-Myers,
975 S.W.2d at 604.





[24] Ethyl, 975 S.W.2d at 616
(citing In re Repetitive Stress Injury Litig.,
11 F.3d 368, 374 (2d Cir. 1993)).





[25] Walker v. Packer, 827 S.W.2d
833, 839 (Tex. 1992). 





[26] Canadian Helicopters Ltd. v. Wittig, 876 S.W.2d 304, 306 (Tex. 1994).





[27] Walker, 827 S.W.2d at 843-44.





[28] We held in Iley
v. Hughes that it was error that would require reversal on appeal for a
trial court to order separate trials of liability and damages in a personal
injury case, but we declined to issue a writ of mandamus.  311 S.W.2d 648, 651-52 (Tex. 1958).





[29] Canadian Helicopters Ltd., 876
S.W.2d at 309; Nat=l Indus. Sand Ass=n v. Gibson, 897 S.W.2d 769, 776 (Tex. 1995); CSR
Ltd. v. Link, 925 S.W.2d 591, 596 (Tex. 1996).





[30] See also Dal-Briar
Corp. v. Baskette, 833 S.W.2d 612, 617 (Tex. App.BEl Paso 1992, orig. proceeding)
(explaining that if a consolidated trial were held, there would be Ano way to untangle how or whether
prejudice and confusion infected the jury=s deliberations. . . . The chance of obtaining meaningful
appellate review on
the propriety of consolidation is, therefore, negligible.@); cf. Hayes v. Floyd,
881 S.W.2d 617, 619 (Tex. App.BBeaumont 1994, orig. proceeding)
(explaining that adequate remedy by appeal existed for allegedly improper
consolidation order).





[31] Tex.
R. App. P. 52.8(c).