In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-324 CV


____________________



IN RE FULJENZ'S MARKETING CORPORATION f/k/a


UNIVERSAL COIN & BULLION CORPORATION and 


UNIVERSAL COIN & BULLION, LTD., 


and WHOLESALE MANAGEMENT PARTNERS, LTD.






Original Proceeding






MEMORANDUM OPINION


 Relators, Fuljenz's Marketing Corporation f/k/a Universal Coin & Bullion
Corporation, Universal Coin & Bullion, Ltd., and Wholesale Management Partners, Ltd.,
("UCB"), (1) request relief from a pretrial discovery order issued by Respondent, the Honorable
Donald J. Floyd, presiding judge of the 172nd District Court, Jefferson County, Texas. Real
Party in Interest is the plaintiff in the underlying litigation, Roxanne Charnock. 
Respondent's order granted Charnock's pretrial motion to gain entry to UCB's corporate
offices pursuant to Tex. R. Civ. P. 196.7. The pertinent part of Respondent's order reads as
follows: 

 The Court ORDERS UCB to make its premises and all buildings on the
premises available for inspection by Monday, August 7, 2006. Plaintiff will
be allowed to take pictures and videotape the premises and business
operations. UCB will have 5 business days from the date it receives hard
copies of any pictures taken, along with any video, to make any objections it
deems necessary, in writing, to the court and counsel for Plaintiff. 


 Respondent conducted a hearing on Charnock's motion and a witness in opposition
to the motion was the only person to testify. This witness, Robert Verde, did not describe
the specific nature of the business conducted on the UCB premises, but various pleadings
indicate UCB is in the business of selling gold coins in various denominations to individuals
seeking investment opportunities. In the underlying litigation, however, Charnock alleges
UCB made "false and misleading representations to [Charnock], in an attempt to increase her
monetary investment in [UCB's] products." Charnock pleads six causes of action: (1)
negligence; (2) negligent misrepresentation; (3) fraud; (4) violation of the Texas Deceptive
Trade Practices Act; (5) conspiracy; and (6) respondeat superior. 

 Charnock argues that she is not required to establish the relevance of photographing
and videotaping the interior of UCB's corporate offices, as well as observing its business
operations, as UCB is a party to the lawsuit. Nevertheless, she argues that information
obtained from inspection, photographing, and videotaping of "the entire premises" is relevant
and necessary to help all participants and an anticipated jury "understand the testimony." 
Charnock's argument to Respondent regarding the relevancy of the information potentially
obtained through the inspection, photographing, and videotaping appears, in pertinent part,
as follows: 

 The testimony has been that this place is set up like a boiler room, with
a big board and all kinds of people making three or four thousand phone calls
a day. . . . This is where Mr. Mike Fuljenz worked. 


 Charnock appears to argue that upon inspecting UCB's business offices, she would
be able to provide photographic and video evidence of fraud and deceptive acts and
conversations on the part of UCB's employees. Yet, near the end of the hearing, Charnock
appears to modify her motion for entry, seeking to ". . . take some pictures so that it will be
helpful to the witnesses' testimony at trial or for a deposition, and look at the business
operations in the most non-invasive manner possible."

 Relator's argument to the trial court in opposition to Charnock's motion complains
of the lack of any foundational basis in relevance for the entry, inspection, photographing,
and videotaping of the UCB business offices, as it pertains to any element of the causes of
action pleaded, as well as the interference and disruption of business, and is supported by the
testimony of Robert Verde, the general manager of Universal Coin and Bullion. As noted
above, Charnock called no witnesses in support of her motion. 

 Though a trial court is given wide latitude in managing discovery and its docket, the
latitude is not unbounded. See In re Van Waters & Rogers, Inc., 62 S.W.3d 197, 200 (Tex.
2001) (orig. proceeding); In re Edge Capital Group, Inc., 161 S.W.3d 764, 770 (Tex. App.-
-Beaumont 2005, orig. proceeding). To correct an error made by the trial court, mandamus
relief is available where the trial court does not follow guiding rules and principles and
reaches an arbitrary and unreasonable decision. See In re Ford Motor Co., 165 S.W.3d 315,
317 (Tex. 2005). A trial court also abuses its discretion if it erroneously applies the law to
the facts, or if it errs in determining the law. In re Bruce Terminix Co., 988 S.W.2d 702, 703
(Tex. 1998) (orig. proceeding). The Texas Supreme Court and others have articulated
principles and adopted procedural devices in an attempt to facilitate the discovery process
and curb abuses. These principles and processes were discussed by the Court in In re Alford
Chevrolet-Geo, 997 S.W.2d 173 (Tex. 1999), from which we take the following:

 First, discovery requests must be reasonably tailored to include only
matters relevant to the case. See In re American Optical Corp., 988 S.W.2d
711, 712 (Tex. 1998); Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 814 (Tex.
1995). Second, discovery may not be used as a fishing expedition or to impose
unreasonable discovery expenses on the opposing party. See K Mart Corp. v.
Sanderson, 937 S.W.2d 429, 431 (Tex. 1996); In re Time Warner Inc. Sec.
Litig., 9 F.3d 259, 263 (2d Cir. 1993). Third, a court may "in the interest of
justice," issue a protective order to "protect the movant from undue burden,
unnecessary expense, harassment, annoyance, or invasion of personal,
constitutional, or property rights." Tex.R.Civ.P. 192.6(b). The new discovery
rules explicitly encourage trial courts to limit discovery when "the burden or
expense of the proposed discovery outweighs its likely benefit, taking into
account the needs of the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the litigation, and the
importance of the proposed discovery in resolving the issues." Tex.R.Civ.P.
192.4(b). Although a trial court has broad discretion to schedule and define
the scope of discovery, it can abuse its discretion by acting unreasonably. See
In re Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1998).


Id. at 180-81 (footnote omitted).

 In the instant case, Charnock's written motion to gain entry onto the UCB premises
reads, in pertinent part, as follows: 

 1. Rule 196.7 allows a party to gain entry on the land of a party by simply
making a request in writing. No motion to the court is required under Rule
196.7. Plaintiff made the appropriate request, in writing, to UCB and its
lawyer on June 6, 2006. Plaintiff made another request on June 12, 2006.


 2. On June 14, 2006, Plaintiff was notified by UCB a premises inspection
would not be allowed, even though an inspection is required under rule 196.7. 
Specifically, Plaintiff was notified: "We are not going to provide those dates
as we are not going to allow you to inspect the premises of UCB and the
compound it is located on." See Exhibit 1, Letter from Nancy Y. Hart. 
Accordingly, Plaintiff was forced to file this motion. 


 3. Under Rule 196.7(c)(2)(C), UCB was required to state its reasons for
not allowing the inspection, but failed to do so. Plaintiff's claims against UCB
arise of [sic] activities that occurred on the UCB premises. In addition, there
has already been testimony regarding the premises by two former employees
of UCB, in addition to the current President and current Sales Manager of the
company. Therefore, Plaintiff needs to inspect the premises, take pictures and
video, witness business operations and get a better understanding of the
underlying testimony to date. 


II.


PRAYER



 4. For these reasons, Plaintiff asks the Court to issue an order allowing
entry onto the premises of UCB for a full inspection of the property it is
located on and for such other and further relief as Plaintiffs [sic] show
themselves [sic] justly entitled.

 

 Charnock's position that she is entitled to full entry onto and inspection of UCB's
business premises by merely making a written request is misplaced. Rule 196.7(b) provides
the following conditions:

 (b) Time, Place, and Other Conditions. The request for entry upon a party's
property, or the order for entry upon a nonparty's property, must state the time,
place, manner, conditions, and scope of the inspection, and must specifically
describe any desired means, manner, and procedure for testing or sampling,
and the person or persons by whom the inspection, testing, or sampling is to
be made.


Tex. R. Civ. P. 196.7(b). The record indicates that neither the June 6, 2006, nor the June 12,
2006, letter from Charnock's trial counsel to counsel for UCB mentioned anything about
videotaping UCB's business offices or witnessing the business operations, nor do the letters
indicate "the scope of the inspection" or describe with any specificity what particular scenes
are to be photographed, videotaped, or witnessed with regard to UCB's business operations. 
Obviously, since no detailed description of what scenes and/or items are to be photographed,
videotaped, and/or witnessed by Charnock's trial counsel was provided, no threshold
showing of relevance of any of this to the subject matter of the pending action has been
made. See Tex. R. Civ. P. 192.3(a). 

 "'Relevant evidence' means evidence having any tendency to make the existence of
any fact that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence." Tex. R. Evid. 401. "Evidence which is not
relevant is inadmissible." Tex. R. Evid. 402. In the record before us, Charnock fails to
explain how photographic and videotape depictions of the business offices and its operations
relate to any element of her various causes of action, nor does she establish how entry and
inspection of the UCB business complex are reasonably calculated to lead to the discovery
of admissible evidence, as relevancy is the cornerstone of admissibility. See Tex. R. Civ. P.
192.3(a); Tex. R. Evid. 402. Absent a showing of relevance, Charnock has failed to
establish the threshold issue with regard to her motion for entry under Tex. R. Civ. P. 196.7.

 Pertinent Texas precedent interpreting Rule 196.7 in light of the discovery issue
presented is essentially nonexistent. Federal case law construing its analogous rule on this
issue is only slightly more instructive. Fed. R. Civ. P. 34(a)(2) permits a party to litigation
to serve a request on any other party to permit "entry upon designated land or other property
in the possession or control of the party upon whom the request is served for the purpose of
inspection and measuring, surveying, photographing, testing, or sampling the property or any
designated object or operation thereon, within the scope of Rule 26(b)." Fed. R. Civ. P.
26(b) provides for scope of and limits on discovery and requires, inter alia, that any
unprivileged matter may be discovered "that is relevant to the claim or defense of any
party[.]" In Belcher v. Bassett Furniture Indus., Inc., 588 F.2d 904, 905-06 (4th Cir. 1978),
the Fourth Circuit examined the propriety of granting a motion for entry and inspection under
Fed. R. Civ. P. 34(a)(3) in a class action lawsuit alleging racial and gender discrimination. 
The Court described the plaintiffs' motion for entry and inspection in the following manner: 
 The plaintiffs' motion sought inspection of the five plants whose operations
are in issue. The motion broadly states that the inspection is to be conducted
over a five-day period by a designated expert. While the expert is identified,
his special expertise is not described. Neither does the motion suggest the
areas of inquiry to which his inspection is to be directed. The expert is to have
the right to roam through the plants, to stop when he chooses, and to make
such inquiries as he deems appropriate of any supervisors or employees in the
plant. He is to be accompanied on his tour by a guide supplied by the
defendant and an entourage consisting of an unspecified number of plaintiff's
attorneys, a paralegal, and two plaintiffs. One of the defendant's attorneys, if
defendant so desires, might be included in the party. 


Belcher, 588 F.2d at 906.

 The Fourth Circuit initially noted that "the order here indicates but small utility to be
derived from the inspection." Id. at 909. The Court also observed that, notwithstanding
extensive pretrial discovery, the plaintiffs had not attempted to depose any of the employees
engaged in the manufacturing process sought to be inspected so as to be able to provide "the
particularity demanded by rule 34, the alleged discrimination that they seek to expose in the
actual operations of the plant or in the activities of the several units of the defendant's
operating procedure." Id. The Fourth Circuit explained as follows:

 We see no reason why the plaintiffs should not engage in normal
methods of deposing witnesses prior to requesting the sweeping relief they
seek here. Although the Federal Rules do not prescribe an order of preference
for discovery techniques, one method cannot arbitrarily be demanded over
another simply because it is less burdensome to the moving party. Depositions
do much to identify the items of discovery and to establish the rights of the
parties under rule 34. . . . And if the testimony taken by depositions should
prove unsatisfactory or if they could be profitably illuminated by testimony
gleaned from a visual inspection, it would be time enough to consider an order
for a simple inspection of the plants.


 Neither counsel's directions nor our own research has led us to
compelling precedent for the type of inspection sought here. Most cases
involving on-site inspections concern a given object on the premises which is
the subject matter of the action, as, for example, a particular machine in a
personal injury or patent infringement case. 


Id. at 910 (footnotes omitted). Ultimately, the Fourth Circuit found the district court's order
to have been improvidently granted, it vacated the order, and remanded the proceeding. Id.
at 911.

 Relying heavily on the Belcher opinion, the federal magistrate in Johnson v. Mundy
Indus. Contractors, Inc., 52 Fed. R. Serv.3d 511, 2002 U.S. Dist. LEXIS 19346, at *1
(E.D.N.C. 2002), was presented with causes of action for gender discrimination, hostile work
environment, and sexual harassment. The magistrate ultimately denied plaintiff's motion to
compel entry and inspection of defendant's premises where plaintiff formerly had access and
performed her duties, and denied plaintiff access to areas in the defendant's nuclear facility
where she was trained and would have worked had she not resigned. Id. at *3, *8. In ruling
as he did, the magistrate, citing to Belcher, noted that a request to inspect a party's premises
must avoid "boilerplate language," and should also plead "the items to be inspected . . . with
reasonable particularity." Id. at *7 (quoting Belcher, 588 F.2d at 907). In Johnson, the
plaintiff's explanation for her need to enter and inspect the defendant's business premises
was found to be "tantamount to 'boilerplate.'" Id. at *8. Characterizing the plaintiff's
justification for entry as "little more than, 'it could help,'" the opinion sets it out as follows:

 [a] first hand view of the physical characteristics of the area in which the
alleged harassment took place would greatly benefit the Plaintiff's efforts to
present her claims. The knowledge would enable counsel to make an informed
examination of witnesses in discovery and to present the Plaintiff's
employment experience to the trier of fact in the context of the work
environment. 


Id. As we noted above, Charnock essentially argues that the information that would be
obtained from the inspection, photographing, and videotaping of all of UCB's business
premises is relevant and such activities are necessary to "help" all participants and the
potential jury to "understand the testimony." While certainly not binding on this Court, both
Belcher and Johnson provide guidance in placing the facts and circumstances before us in
the proper context. See Maritime Overseas Corp. v. Waiters, 917 S.W.2d 17, 18 (Tex. 1996);
Penrod Drilling Corp. v. Williams, 868 S.W.2d 294, 296 (Tex. 1993); Autin v. Daniel Bruce
Marine, Inc., 862 S.W.2d 208, 210 (Tex. App.--Beaumont 1993, no writ). Charnock's
response to the petition for writ of mandamus alludes to "multiple witnesses (both current
and former employees)" who purportedly "have given testimony regarding the conduct that
has occurred on the premises[.]" The record before us contains no such testimony, only the
testimony from UCB's general manager, Robert Verde. Based upon the current state of the
litigation as represented by the record before us, we find Charnock has not demonstrated the
relevance of any information or tangible items sought by entry upon the business premises
of UCB, and we further find that whatever knowledge may be gleaned from an inspection
of UCB's premises, memorialized by way of photographs and videotapes, "is obtainable from
some other source that is more convenient, [and] less burdensome," and further that "the
burden . . . of the proposed discovery outweighs its likely benefit, taking into account the
needs of the case, . . . and the importance of the proposed discovery in resolving the issues." 
See Tex. R. Civ. P. 192.4. 

 Based upon the record before us, we find Respondent abused his discretion by issuing
the June 28, 2006, order making UCB's business premises and business operations available
for inspection, photographing, and videotaping by Charnock and her trial counsel. 
Accordingly, we conditionally grant the petition for writ of mandamus and direct Respondent
to vacate the order. We are confident the Respondent will follow this opinion. The writ will
issue only if Respondent fails to comply.

 WRIT CONDITIONALLY GRANTED.

 PER CURIAM

Submitted on August 21, 2006

Opinion Delivered October 26, 2006


Before Gaultney, Kreger and Horton, JJ.
1. According to its pleadings filed with the trial court, Fuljenz's Marketing Corporation
f/k/a Universal Coin & Bullion Corporation and Universal Coin & Bullion, Ltd. is a Texas
limited partnership. Wholesale Management Partners, Ltd. is also a Texas limited partnership
and is a business entity separate from UCB. Although UCB and Wholesale jointly pray for
mandamus relief, the business premises at issue in this mandamus proceeding are UCB's, and
not Wholesale's.