IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-1023
════════════
 
In re Allied Chemical 
Corporation, et al., 
Relators
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued November 
16, 2005
 
            
Justice Brister delivered the opinion of the Court, in 
which Justice Hecht, Justice Medina, Justice 
Green, and Justice 
Willett joined.   

 
            
Justice Hecht filed a concurring opinion. 
 
            
Chief Justice Jefferson filed a dissenting opinion, in which 
Justice O’Neill, Justice 
Wainwright, and Justice 
Johnson joined.
 
            
Justice Wainwright filed a 
dissenting opinion.
 
            

            
Trial judges have broad discretion in scheduling discovery and trial, but that 
discretion has never been unlimited. As we stated in 1847, trial courts may set 
trials as they wish, but not so indiscriminately that the parties are “deprived 
of any just defense, or that their rights would in any manner be jeopardized.”[1] 
            
Since 1847, new kinds of litigation have emerged that require new applications 
of this rule. Eleven years ago in Able Supply Co. v. Moye, we held that in mass tort cases involving hundreds 
of parties and complicated causation questions, a trial judge could not postpone 
responses to basic discovery until shortly before trial.[2] Finding that is precisely what has 
occurred here, we again grant mandamus relief.
I. The Proceedings and Mootness
            
Roughly 1,900 plaintiffs sued 30 defendants in Hidalgo County, alleging exposure to chemical 
fumes and leaks from several sites where pesticides were mixed or stored before 
the sites were placed in receivership in 1967 and remediated in 1980. The plaintiffs identified no particular 
incidents or products, instead alleging exposure to a “toxic soup” of emissions 
in the air for many decades. As we recently noted, no such claim “has ever been 
tried or appealed in Texas,” and thus “the tort is immature.”[3] 
            
Five years after filing, the trial court set the first trial for little more 
than six months away. Despite our admonitions that trial courts should “proceed 
with extreme caution” in setting consolidated trials in immature mass torts,[4] the trial court consolidated five claims 
for the initial trial. The five plaintiffs had little in common — ranging in age 
from 29 to 74, residing in various directions from two different sites, alleging 
exposure over different parts of seven decades, and suffering injuries from 
asthma and arthritis to miscarriages and heart disease, 
and in two cases damaged property.        Shortly 
after the trial court’s order, we issued In re Van Waters & Rogers, 
Inc., reversing the same kind of order in the same kind of case in the same 
county.[5] The defendants brought the opinion to the 
trial judge’s attention, but he changed nothing. Neither did the Thirteenth 
Court of Appeals, where the defendants sought mandamus relief to no avail.[6] 
            
But when we granted a stay and requested full briefing, the plaintiffs 
retreated, asking the trial court to (1) sever out the property claims, (2) drop 
one plaintiff, and eventually (3) withdraw its consolidation order and proceed 
to trial on just one plaintiff’s claims. The trial court granted these requests, 
ordering that “the personal injury claims of Plaintiff Guadalupe Garza proceed 
to trial.”
            
We disagree with the dissent that this last order renders these proceedings moot 
for several reasons. First, in their petition for mandamus (as well as in the 
trial court), the defendants complained of two things — that the trial court 
erred in setting a consolidated trial “in contravention of In re Van Waters 
& Rogers, Inc. and in the absence of an adequate response to the Able 
Supply Interrogatory.” The trial court has withdrawn consolidation (the 
Van Waters problem), but one plaintiff’s claims have still been ordered 
to trial despite inadequate responses (the Able Supply problem). As the 
relief requested by the defendants is a trial of one plaintiff’s claims held a 
reasonable time after the Able Supply interrogatory is adequately 
answered,[7] a controversy still exists whether they 
are entitled to that.[8]
            
Second, the defendants argue that while the plaintiffs have moved for 
deconsolidation in the face of this mandamus proceeding, even though they were 
unwilling to do so in the face of Van Waters, they have refused to give 
any assurance that they will not seek future consolidated trials inconsistent 
with Van Waters. The situation that gives rise to this proceeding is thus 
fully capable of repetition, and if review can be evaded by the modification of 
orders pending mandamus proceedings, the defendants would be put to the repeated 
expense of seeking review only to have it denied by last-minute changes in the 
trial court’s orders. An appellate court’s jurisdiction cannot be manipulated in 
this way.
            
Third, our order staying the docket control order here preserved the parties’ 
positions as they were at the time, not as they hustled to change them 
thereafter. The plaintiffs apparently filed supplemental answers after the trial 
setting — not the order but the trial date itself. The question before us is not 
changed by knowing what experts the plaintiffs would have finally disclosed at 
trial; that they would not do so any earlier is precisely the defendants’ 
complaint. And while the defendants certainly did challenge the adequacy of 
those answers at oral argument (the first time the plaintiffs asserted them as 
an excuse), the question before us is not their adequacy but their timeliness. 

            
Finally, while we encourage parties to work out pretrial disputes so appellate 
courts need never consider them, we cannot encourage parties to manipulate 
pretrial discovery to evade appellate review. Pretrial cannot be conducted one 
way when appellate courts are looking and another way when they are not. As 
hundreds of similar claims remain in this case and the plaintiffs stoutly 
maintain they had no duty to supplement their answers at all, the question 
before us is not moot as it is capable of repetition in a manner that evades 
review.[9]
II. The Trial Setting and Able Supply
            
In Able Supply, more than 3,000 plaintiffs sued nearly 300 defendants for 
toxic exposure. After 8 years, the plaintiffs still had not named anyone who 
could connect their injuries to any defendant’s product. Instead, each plaintiff 
responded in discovery that this basic and crucial element of their claims “has 
not been determined at this time, but will be supplemented at a later date.” As 
here, the plaintiffs asserted that the trial court had “broad discretion to 
manage its own docket, and . . . has acted well within that discretion in 
determining that no answers are required at the present time.”[10] We disagreed, holding that the trial 
court’s apparent indifference as to when such information might be disclosed was 
a clear abuse of discretion with no adequate remedy by appeal.[11]
            
The issue in this case is the same. The defendants made the same request 
as in Able Supply, asking for medical experts who could connect the 
plaintiffs’ diseases to the defendants’ products.[12] Although five years had passed since 
filing, the plaintiffs all responded either “not applicable” or that “none of 
their treating physicians” could do so. But the interrogatory did not ask about 
treating physicians, but any expert; as we noted in Merrell Dow 
Pharmaceuticals, Inc. v. Havner, treating 
physicians usually cannot make this kind of connection.[13] By changing the defendants’ question, 
the plaintiffs were able to respond with almost nothing.
            
The plaintiffs point out that their supplemental answers included a long list of 
chemicals to which they were “potentially exposed,” and medical articles and 
expert reports suggesting some of those chemicals were “capable of causing” or 
“significantly contributed” to some of their diseases. But as this Court 
explained in Havner, “[t]o raise a fact issue 
on causation . . . a claimant must do more than simply introduce into evidence 
epidemiological studies.”[14] Evidence that a chemical can 
cause a disease is no evidence that it probably caused the 
plaintiff’s disease.[15] And as Havner illustrated, an expert’s assurance that 
a study establishes causation does not make it so. Claimants must have an expert 
who can answer why a study is reliable, and how the plaintiff’s exposure is 
similar to that of the study’s subjects.[16] An expert must also exclude other causes 
with reasonable certainty,[17] a special problem here as the plaintiffs 
allege exposure to so many different chemicals. By failing to list any expert 
who could make this vital connection, the plaintiffs’ responses were, for all 
practical purposes, just like those in Able Supply: “We’ll tell you 
later.”
            
We recognize this evidence is hard to obtain, but courts cannot “embrace 
inferences that good science would not draw.”[18] Without it, no one can prepare for 
trial. Accordingly, we have repeatedly granted mandamus in mass toxic tort cases 
when plaintiffs have refused to produce basic information like this.[19] 
            
The plaintiffs point out that this case comes to us in a different posture than 
Able Supply, in which the trial court had refused to compel discovery. 
Here, although the defendants have moved to compel discovery several times, the 
order they challenge merely sets the case for trial. But that does not make this 
case different for two reasons.
            
First, unless we assume the interrogatory was answered in bad faith, there is 
nothing more to compel. The discovery rules have been amended since Able 
Supply, now requiring that “a party must make a complete response, based on 
all information reasonably available to the responding party or its attorney at 
the time the response is made.”[20] Parties and attorneys certify this to be 
true when they sign a discovery response;[21] they can no longer simply choose to 
delay disclosure until the last minute.[22] Taking their responses at face value, 
the plaintiffs here and their attorneys certified that no one could make 
the causal connection they needed. Given the short time remaining before trial, 
the defendants properly objected that this rendered the trial setting premature; 
they did not have to spend the few remaining weeks begging for better answers. 

            
Second, Able Supply addressed not just inadequate responses but 
inadequate time for discovery. There, the trial court never barred 
discovery completely, as the plaintiffs promised to give better answers 30 days 
before trial. But we held that was not enough: 
 
In a suit 
of this massive nature, which includes disparate exposures to a multitude of 
products, requiring defendants to wait until 30 days before trial to obtain 
crucial and probative evidence of a causal connection between their products and 
plaintiffs’ injuries is such a denial of their rights as to go to the heart of 
the case.[23]
 
 
Here, the 
plaintiffs never promised better answers any earlier; to the contrary, they 
claimed to have “fully and accurately” responded already. 
      
            
Thus, the problem here is the same as that in Able Supply: too little 
time between adequate responses and trial for the defendants to have a fair 
chance to mount a defense. This problem can be addressed from either end: the 
defendants in Able Supply sought to move discovery responses up; the 
defendants here sought to move the trial setting back. Defendants are not 
required to seek both. Instead, the trial court abused its discretion by doing 
neither.
III. Mandamus and Appeal
            
Of course, we generally do not consider interlocutory complaints about trial 
settings.[24] But we generally do not review orders 
refusing to compel discovery either. Yet we did so in Able Supply for 
three reasons.
            
First, we have granted mandamus when a discovery order imposes a burden on one 
party far out of proportion to any benefit to the other.[25] Here, as in Able Supply, the 
burden of making 30 defendants prepare in the dark for 1,900 claims is far out 
of proportion to the benefit of giving the plaintiffs more time (after five 
years) to decide who or what injured them. Filing thousands of claims like those 
here requires only a reasonable inquiry and belief that they are not 
groundless;[26] recovering on them requires considerably 
more. In the meantime, thousands of hours and millions of dollars may be 
needlessly wasted if the claims can never be proved. Mandamus is appropriate in 
such cases to avoid this “monumental waste of judicial resources.”[27] 
            
Second, we have granted mandamus when a denial of discovery goes to the heart of 
a party’s case.[28] There are many cases in which it is 
perfectly reasonable to conduct discovery up until 30 days before trial.[29] But in suits like this one, denying 
discovery until then goes to the very heart of this case, as well as what our 
justice system is supposed to be about.[30]
            
Third, we have granted mandamus when a discovery order severely compromises a 
party’s ability to present any case at all at trial.[31] No trial was set in Able Supply, 
but the plaintiffs’ intention to withhold responses until shortly before then 
meant the defendants could not prepare a viable defense. Late disclosure may not 
compromise a defendant when the complaint is minor or causation obvious; but the 
connection between chemical fumes and cancer is quite different, as is a 
bellwether trial that may affect thousands of others. 
            
We cannot ignore the trial court’s order here without ignoring Able 
Supply. If mandamus was proper there, it must be here too.
IV. Conclusion
            
Since Able Supply, we have intervened to compel discovery only in complex 
mass tort cases like this one.[32] Similarly, today’s holding is no 
indication that we intend to intervene in more trial settings. There are good 
reasons to schedule trial settings well in advance, and few reasons to postpone 
doing so until discovery is fully complete. But trial settings, like discovery 
orders, cannot be used to hold the parties hostage.[33] 
            
It has long been the rule in Texas that plaintiffs bear the burden of 
pleading and proving how they were injured and by whom.[34] They cannot simply file suit against 
everyone in the vicinity and demand that the defendants prove otherwise.
            
Therefore, we direct the trial court to vacate its order setting any of the 
plaintiffs’ claims for trial until the defendants have a reasonable opportunity 
to prepare for trial after learning who will connect their products to 
plaintiffs’ injuries. The writ will issue only if the trial court fails to 
comply.
 
            
___________________________________
            
Scott Brister
            
Justice
 
OPINION 
DELIVERED: June 15, 2007








[1] 
Borden v. Houston, 2 Tex. 594, 603 (1847) (“In refusing this application 
[for continuance] we are unable to perceive that any rule of law was violated, 
or that there was any abuse of judicial discretion calling for a reversal of the 
judgment. Had it appeared that by being required to proceed to trial at that 
term, the defendants, without any fault on their part, would be deprived of any 
just defense, or that their rights would in any manner be jeopardized, a 
different case would have been presented.”).

[2] 
898 S.W.2d 766, 772 (Tex. 1995).

[3] 
In re Van Waters & Rogers, Inc., 145 S.W.3d 203, 208 (Tex. 2004).

[4] 
Id. at 208 (citation omitted); 
In re Ethyl Corp., 975 S.W.2d 606, 614 (Tex. 1998) (allowing consolidated trial as 
asbestos claims were mature tort).

[5] 145 S.W.3d at 
211.

[6] 
__S.W.3d__, __(Tex. App.–Corpus Christi 
2004).

[7] 
“Accordingly, Relators, defendants below, request that . . . the trial court be 
ordered to proceed to trial with a single plaintiff, after discovery is 
complete, and after the designated plaintiff — consistent with Able Supply 
— connects his or her alleged injury to exposure to the defendants’ products 
and services via testimony of a qualified medical expert.” 

[8] 
See In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005) (“A case 
becomes moot if a controversy ceases to exist between the parties at any stage 
of the legal proceedings . . .”).

[9] 
See Blum v. Lanier, 997 S.W.2d 259, 264 
(Tex. 
1999).

[10] Able Supply Co. v. Moye, 898 S.W.2d 766, 770 (Tex. 1995).

[11] Id.

[12] Specifically, the defendants’ interrogatory 
stated: 
Please state the name and address of each and every 
doctor, physician, psychiatrist, psychologist, counselor, or other medical 
practitioner who has attributed your alleged injury made the basis of this 
lawsuit to exposure to the Defendants’ products or Defendants’ conduct, 
including the dates of treatment or examination of each such doctor, physician, 
or other medical practitioner, and the name or identity of the products to which 
your alleged injury is attributed.

[13] 953 S.W.2d 706, 719-20 (Tex. 1997).

[14] Id. at 720.

[15] Id. at 714-21.

[16] Id. at 720.

[17] Id.

[18] Id. at 727.

[19] See Van Waters, 62 S.W.3d 197, 201 
(Tex. 2001); In re Colonial Pipeline 
Co., 968 S.W.2d 938, 942 (Tex. 1998); Able Supply, 898 S.W.2d at 
768.

[20] Tex. R. Civ. P. 193.1; see also 
Alex Wilson Albright, New Discovery Rules: The 
Supreme Court Advisory Committee’s Proposal, 15 Rev. of Litig. 275, 292-93 (1996) (“The 
proposed rules, therefore, require parties to respond, amend, and supplement 
discovery earlier than required under the current rules. While parties now may 
wait until as few as thirty days before trial to disclose important requested 
discovery, Proposed Rule [193.1] requires a party to make full disclosure upon 
the initial response to written discovery.”).

[21] See Tex. R. Civ. P. 191.3 (“The signature 
of an attorney or party on a disclosure constitutes a certification that to the 
best of the signer’s knowledge, information, and belief, formed after a 
reasonable inquiry, the disclosure is complete and correct as of the time it is 
made.”)

[22] See id. 193.5(b) 
(requiring supplemental responses “reasonably promptly after the party discovers 
the necessity for such a response”), 193.6(a) (requiring exclusion of untimely 
supplements except on showing of good cause and no unfair surprise or 
prejudice).

[23] Able Supply, 898 
S.W.2d at 772.

[24] See Gen. Motors Corp. v. Gayle, 951 
S.W.2d 469, 477 (Tex. 1997) (“[T]he denial of a motion for 
continuance is an incidental trial ruling ordinarily not reviewable by 
mandamus.”).

[25] See Able Supply, 898 S.W.2d at 771 
(citing Walker v. Packer, 827 S.W.2d 833, 843 (Tex. 1992)).

[26] See Tex. R. Civ. P. 13.

[27] Id.

[28] See id. 

[29] See, e.g., Tex. R. Civ. P. 190.2 (allowing discovery until 30 days before 
trial in cases involving up to $50,000).

[30] See Able Supply, 898 S.W.2d at 772.

[31] See id.

[32] See In re Van Waters & Rogers, 
Inc., 62 S.W.3d 197, 201 (Tex. 2001); In 
re Colonial Pipeline Co., 968 S.W.2d 938, 943 (Tex. 1998).

[33] See Able Supply, 898 S.W.2d at 772.

[34] See Gaulding 
v. Celotex Corp., 772 S.W.2d 66, 68 (Tex. 1989) (“A 
fundamental principle of traditional products liability law is that the 
plaintiff must prove that the defendants supplied the product which caused the 
injury.”).